**ROGERS v. SELLS.**

No. 25929. Nov. 4, 1936.

Thos. H. Owen and Paul N. Lindsay, for plaintiff in error.

E. G. DeParade, Burton Duncan, James H. Ross, and S. J. Clay, for defendant in error.

PER CURIAM. The parties will be referred to herein as they were in the trial court.

Plaintiff, Homer Sells, a minor, by his father and guardian, brought this action against the defendant, Dr. McLain Rogers, to recover damages for personal injuries growing out of an operation by defendant in amputating the foot of plaintiff. The petition sets out two causes of action, the first being for trespass and assault and battery in that the defendant operated on plaintiff without plaintiff's consent or the consent of his parents. The second cause of action was for malpractice, but the jury found for plaintiff on the first cause of action only, and the question of the skill of defendant is out of the case.

It appears from the record that plaintiff was a boy, 14 years of age, and was in an automobile accident some 15 miles from the town of Clinton, Ok'a., and suffered a broken leg some few inches above the ankle. He was taken in a car from the scene of the accident to the defendant's hospital at Clinton: with some assistance he hopped on his good leg a short distance to the car, and then hopped a short distance from the car to the hospital and was put on a cart or wheel chair and taken to a ward. Plaintiff's brother and two other persons were with him until he arrived at the hospital, and immediately after getting the plaintiff in the hospital the brother went for the plaintiff's parents, who lived some eight miles from Clinton. This accident occurred about midnight.

Dr. Rogers testified he was called to the hospital where he found the plaintiff, and on examination, found that his right leg was crushed and mangled; that the muscles, blood vessels, and nerves were torn and some of the nerves severed, and that the foot had no circulation and that he deemed an immediate amputation necessary under the circumstances in order to preserve the life and health of the boy, and amputated the foot.

He was corroborated in this testimony by two nurses and an assistant who was not a surgeon but a bacteriologist and in charge of the X-ray. No X-ray was made of the foot. Three reputable surgeons approved, by way of expert testimony, the actions of Dr. Rogers.

It was admitted by the defendant that he operated without obtaining the consent of the parents of this boy, although the defendant, together with two nurses and the bacteriologist, all testified that Dr. Rogers told the boy that an amputation was necessary and that the boy said go ahead and do whatever was right. The boy denied this.

Plaintiff, his parents, his brother, and a Mrs. Pritchard and Dr. E. C. Wilson testified on behalf of plaintiff. Plaintiff testified as to the wreck and that his leg was broken; that he climbed over the front seat of the car to get out and that he was helped in the other car and that he wiggled his toes on his way to the hospital, as well as after he got in the hospital, and that he wiggled his toes and could both see and feel them move; that the wound bled about two tablespoonfuls; that his leg was not swollen, but gave him considerable pain; that he was in the hospital about 45 minutes after the accident, and that Dr. Bullock, an assistant at the hospital, told him that he would have to put him to sleep to set the leg. Plaintiff further testified that he did not consent to the operation or even discuss an operation, and that the next thing he knew was about nine o'clock the next morning, when he awoke and discovered, for the first time, that his leg had been amputated; that he did not see Dr. Rogers the night of the accident and did not see him until the second day after he was taken to the hospital.

Mrs. Pritchard said that she was at the scene of the accident and observed plaintiff's leg and that the bone was sticking out of his leg and through the skin about an inch: that he only bled a few drops; that the leg was not swollen and was not turning black.

Plaintiff's brother, likewise, testified that the leg was broken above the ankle; that the bone stuck out of the wound and that there was some dirt on it and that it bled very little and it was not swollen or turning black, and that nothing was said about the operation at the hospital.

Dr. E. C. Wilson, a reputable surgeon, testified hypothetically and upon the state of facts as disclosed by the lay witnesses: he contradicted the opinion of defendant and his experts, stating that he would have stopped the bleeding first and have taken an

X-ray to determine the condition of the foot; that it would only take ten or fifteen minutes to make an X-ray picture and that he would have cleaned the wound and set the leg, which he said was not a difficult matter, and further stated that he did not consider it an emergency. That the only necessity for haste would be to stop the hemorrhage and that he would not have amputated the foot unless the car had mangled and destroyed the main blood vessels, and that there were four of them; that under the conditions as described by the lay witnesses, and under the treatment as indicated by himself, unless there had also arisen some involved complications he would not have amputated the leg, and he would not have operated immediately if the plaintiff was in shock. This resolves the case into a disputed question of fact, i.e., the condition of the boy's leg at the time of the operation based upon expert testimony which in turn is on the one hand based on scientific testimony, and the other on lay testimony, together with the question of the burden of proof.

The defendant seeks a reversal of this case upon three grounds.

First, that the court erred in giving instruction No. 2, which told the jury that as the amputation was admittedly done without express consent and that the defendant seeks to justify on the ground of an emergency or implied consent, that the burden was upon the defendant to prove the existence of an emergency by the preponderance of the evidence.

Second, that there was no competent evidence on the part of the plaintiff, or, in other words, that the evidence of the lay witnesses was incompetent and expert testimony based thereon was likewise incompetent.

Third, that the trial court did not approve the verdict.

This is an action in tort. There is no difference between it and that of an ordinary personal injury case. Defendant admits that he performed the operation, or committed the assault, but seeks to excuse himself or justify on the ground that there was an emergency, or, in other words, sets up an affirmative defense. This being the case, the burden was on him to prove it by the preponderance of the evidence. The instructions of the court were correct.

Our Supreme Court, in the case of Equitable Surety Company v. Sapp, 77 Okla. 221, 187 P. 917, says in the syllabus:

"Where a defendant sets up an affirmative defense and the plaintiff denies the existence of said fact, the burden of proof is upon the defendant to prove said allegations of his answer."

See, also, the California cases of Inderbitzen v. Lane Hospital (Cal. App.) 12 P. (2d) 744, 13 P. (2d) 905; Marks v. Reissinger (Cal. App.) 169 P. 243; Galloway v. United Railroads (Cal. App.) 232 P. 491.

The fact that plaintiff may have, in his petition, pleaded that there was no emergency is immaterial. Defendant, in order to escape liability, must have consent, either express or implied. He admits that he had no express consent, but seeks to excuse himself upon the affirmative defense of an emergency or an implied consent. This defense, being put forward by him, must be established by him.

Defendant next complains that there was no competent evidence on the part of the plaintiff. In other words, that the evidence of the lay witnesses as to lay facts was incompetent and that only the testimony of the expert witnesses is competent. The error of this position is that, as suggested by plaintiff, if followed to its logical conclusion, there could be no recovery in an action of this kind except in very rare instances indeed, because only in few cases would it be possible to have proof by disinterested, qualified, expert witnesses. This is not logical and is not the law. A lay witness may testify to an objective fact; he certainly has the right to use his senses the same as an expert witness. He can see a broken bone; he can tell whether it sticks through the skin or whether it doesn't; he can see whether there is any discoloration or not; whether there is any bleeding, and, most certainly, this boy was competent to testify that he could wiggle his toes, and evidently the jury believed him.

Our court, in the case of Govan v. McCord. 155 Okla. 278, 11 P. (2d) 141, holds:

"In action against surgeon for malpractice based on tonsil operation, plaintiff and nurses, though nonexperts, held competent to testify that uvala pillars and a part of soft palate were removed."

And, in the recent case of Aderhold v. Sewart, 172 Okla. 72, 46 P. (2d) 340, holds:

"Lay witnesses may testify as to commonplace conditions and commonplace actions of surgeons and nurses in connection with operation."

See, also, St. Louis San Francisco Railway Co. v. Clarke, 104 Okla. 24, 229 P. 779.

It is also said in the Ohio case of Francis v. Brooks, 24 Ohio App. 136, 156 N. E. 609:

"Expert testimony is not essential in all cases to enable a jury to determine whether physician, surgeon, or dentist has been guilty of malpractice, and if violation of physician's duty to patient appears otherwise, plaintiff may refrain from calling expert witnesses."

Also see the Massachusetts case of Miller v. Boston & M. R. R., 134 N. E. 368, and Youngkin v. Yetter (Iowa) 181 N. W. 793.

It was proper for Dr. Wilson to base his expert testimony upon the evidence of the lay witnesses. See Lynch v. Meyersdale Electric Light, etc., Company (Pa.) 112 Atl. 58, in which it is said:

"Experts who heard the testimony of lay witnesses who described the facts were properly permitted to base their opinions thereon."

We, therefore, conclude that the testimony of the lay witnesses was competent in the first place and that Dr. Wilson, an expert, was qualified to give his expert opinion based upon the statement of facts as detailed by the lay witnesses, and this being the case, it raised a question of fact for the jury, and the jury decided the issues for the plaintiff, and we are not justified in setting aside this verdict. They had a right to believe the lay witnesses and the plaintiff's expert and not believe the testimony of defendant and his associates, and, of course, if they didn't, then the testimony of defendant's expert witnesses was immaterial.

Defendant next complains that the trial judge did not approve the verdict. Of course it is well settled that it is the duty of the trial court to approve the verdict of the jury, and if it does not, then it is his duty to set aside the verdict, but, as we view this case, the trial court did approve the verdict of the jury. The words of the trial court complained of are: "It is problematical whether the plaintiff would have recovered from the effects of the injury received prior to the operation by the defendant." Plaintiff meets this argument to the effect that it is in a journal entry drawn by the defendant, as well as some other ex parte statements, but, be that as it may, we think the use of these words falls far short of showing that the trial court did not approve this verdict. He rendered the judgment.

Where there is a conflict in the evidence, or where there is any evidence reasonably tending to support the verdict of the jury, it is binding upon this court. This proposition is decisive of this case. There is ample evidence to support the verdict of the jury, and, this being so, the case should be affirmed. This rule is so elementary and has been decided so many times by this court that we deem it unnecessary to cite authorities.

The judgment of the trial court is, therefore, affirmed, and it is further ordered that the defendant in error, Homer Sells, an infant, by his father, J. G. Sells, have and recover judgment against the plaintiff in error and the U. S. Fidelity & Guaranty Company of Baltimore, Md., for the sum of $8,000, together with interest thereon from the 21st day of February, 1934, at 6 per cent. per annum, and for costs.

The Supreme Court acknowledges the aid of Attorneys Chas. R. Bostick, Villard Martin, and James E. Bush in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Bostick and approved by Mr. Martin and Mr. Bush, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and PHELPS, CORN, and GIBSON, JJ., concur. RILEY, BAYLESS, BUSBY, and WELCH, JJ., absent.