Hart, J.,
concurring. The claimed errors upon which the Court of Appeals based its reversal of the judgment will be discussed in the order named by that court in its entry of reversal.
First, it is claimed that the trial court erred in refusing to admit certain evidence offered by Laird. Plaintiff in her petition charges that the operation on her nose was without her permission and consent and over her remonstrance and, in support of those allegations, testified that she protested the treatment and attempted to get out of Laird’s surgical chair. To rebut such allegations and testimony, Laird, testifying in his own defense, was asked the following questions:
“Q. Now, Doctor, did you at any time forcefully and against the will of Martha Lacey perform an operation on her nose?”
“Q. Did you at any time at all perform an operation on Martha Lacey’s nose without her consent?”
Objection to these questions was made by counsel for plaintiff. The trial court sustained the objections and refused to permit Laird to answer. Counsel for plaintiff claim that the court was justified in excluding such rebuttal testimony as being irrelevent and immaterial in the light of three undisputed facts in the ease, namely, that Laird performed a nonemergency operation on the plaintiff; that the plaintiff was a minor at the time of said operation; and that Laird failed to secure the consent of plaintiff’s parents to such operation.
It is apparent that the solution of the question here under discussion is linked up with and perhaps is dependent upon the *16 existence or nonexistence of the second error of the trial conrt listed by the Conrt of Appeals, i. e., the charge to the jury that a minor 18 years of age cannot consent to what the conrt designated a “simple” operation. The major issne presented in this case is whether, in the absence of an emergency, an operation performed upon a minor without the consent of the parents or persons standing in loco parentis is a legal wrong or a technical assault? The question has not heretofore been determined by this court.
On this subject the trial court charged the jury as follows:
“Now, the law of this state is that no person, adult or otherwise, may be operated upon without their consent, express or implied. If a person is under the care of a reputable physician or under the care of a physician — and in an emergency your consent that that doctor use his best judgment is implied — this was not an emergency. I think no reasonable mind would disagree upon that subject. It was an operation, a corrective process, whatever you might want to call it, that was not an emergency.
“Now, the general rule is that a minor in cases such as this has no power to consent to such an operation; that the only persons who can consent for a minor, when it is not an emergency, are their parents, one or the other; that no one else in such case has any power to consent that such an operation may be performed. And so I think we must conclude as a matter of law in this case that neither of the parents having consented, expressly or implied, there being no evidence of that in this case, that there was in this case in fact a technical battery upon this plaintiff. ’ ’
Laird strenuously claims that the court erred to his prejudice in so charging on consent. In support of this claim, he cites the case of Bakker v. Welsh, 144 Mich., 632, 108 N. W., 94, 7 L. R. A. (N. S.), 612, wherein the Supreme Court of Michigan stated the rule as follows:
“Where a full grown boy [age 17], accompanied by adult relatives, after several visits to a physician’s office, and after due consideration, submits to the administration of an anaes-thetic preparatory to the performance of a minor surgical operation, and dies during the administration of the anaesthetic, and there is nothing to indicate that his father’s consent to the *17 operation would not have been freely given if asked, and nothing to indicate to the physician that the father did not approve, the administrator of the boy’s estate cannot recover damages from the physician for his death nnder the death act because the father’s consent was not obtained.”
But it must be noted that in the later case of Zoski v. Gaines, 271 Mich., 1, 260 N. W., 99, the same court, to some extent, modified the rule stated in the Bakker case, although the court did not expressly overrule it. In the Zoski case, the defendant performed a tonsillectomy on a boy nine and a half years of age without the consent of his parents, although the boy had been taken to the city physician by a visiting nurse and later sent to the hospital. At the same time there was delivered to the hospital a written memorandum from the city physician requesting the removal of the boy’s tonsils and adenoids. At the time of the operation, the boy was accompanied by his 15-year-old brother. Blindness followed the operation. The court held:
“Except in very extreme cases, a surgeon has no legal right to operate upon a child without consent of its parents or guardian, hence, finding of a trial court that unauthorized tonsillectomy amounted to an assault in law is not disturbed.”
The court in that case cited in support of its holding the following cases: Rishworth v. Moss (Tex. Com. App.), 191 S. W., 843; Mohr v. Williams, 95 Minn., 261, 104 N. W., 12, 1 L. R. A. (N. S.), 439, 111 Am. St. Rep., 462, 5 Ann Cas., 303; Browning v. Hoffman, 90 W. Va., 568, 111 S. E., 492.
The term, “consent,” as used herein carries with it the assumption that previous full disclosure of the implications and probable consequences of the proposed conduct to which such consent applies has been given in such terms as may be fully comprehended by the person giving the consent. It necessarily follows that consent requires a reasonable degree of maturity of mind depending upon the intricacies of the subject matter to which the consent is applicable.
A review of a few authorities on this question is appropriate. In the case of In re Hudson, 13 Wash. (2d), 673, 126 P. (2d), 765, the deformed arm of a child 12 years of age and under the jurisdiction of the Juvenile Court was amputated without the express consent of her parents. The court held:
*18 “It is a well-established rule that a surgical operation may not be performed on a person until the patient, if sui juris, consents thereto; or, in the ease of an incompetent, no operation may be performed by a surgeon upon such person until the guardian of that incompetent consents to the operation; and, if an infant, no operation may be performed until consent is first obtained of the natural guardian or of one standing in loco par-entis to the infant. Pratt v. Davis, 118 Ill. App., 161; annotation, 76 A. L. R., 562 et seq.”
In the case of Tabor v. Scobee (Ky.), 254 S. W. (2d), 474, the court held:
“In case of an emergency, a surgeon may operate on a child without waiting for authority from parents or person standing in loco parentis where it appears impracticable to secure consent, but in absence of emergency an operation performed without consent of parents or person standing m loco parentis is a legal wrong.”
In the case of Moss v. Rishworth (Tex. Civ. App.), 222 S. W., 225, the court held that, where surgeons, without the appearance of any emergency and without the consent of the parents but with the consent of an adult sister of a child 11 years of age, the sister being a student nurse in whose custody the child temporarily was, operated on him for diseased tonsils, the failure to obtain the parents’ consent could not be justified on the ground that the operation was necessary in that if the tonsils were not removed serious results might have followed.
In the case of Rogers v. Sells, 178 Okla., 103, 61 P. (2d), 1018, where a boy 14 years of age suffered a fracture of a leg in an automobile accident whereupon he was taken to a hospital where his foot was amputated without the consent of his parents, the court held that “a surgeon who operates without the consent of the patient, or the patient’s parents or guardian in case of a minor, is guilty of an assault and battery unless there was an emergency which prevented any delay and which emergency created an implied consent,” and that a surgeon who “relies on the defense of emergency, has the burden of proof to establish the existence of an emergency by a preponderance of the evidence. ’ ’
In the case of Bonner v. Moran, 126 P. (2d), 121, 13.9 A. L. *19 R., 1366, the United States Court of Appeals for the District of Columbia held, in an action against a surgeon for damages resulting from a skin-grafting operation performed on a 15-year-old boy, that the trial court erred in charging that, if the jury believed that the boy himself was capable of appreciating and did appreciate the nature and consequences of the operation and actually consented or by his conduct impliedly consented, a verdict must be for the surgeon; and that the trial court erred in refusing to charge that before the surgeon could perform the operation he must first have obtained the consent of the boy and of the boy’s parents.
The general rule seems to be that, unless there exists an emergency, which prevents any delay, or other exceptional circumstances, a surgeon who performs an operation upon a minor without the consent of his parents or guardian is guilty of a trespass and battery. This rule is not based upon the capacity of a minor to consent, so far as he is personally concerned, within the field of the law of torts or law of crimes, but is based upon the right of parents whose liability for support and maintenance of their child may be greatly increased by an unfavorable result from the operational procedures upon the part of a surgeon.
In view of the holdings of the courts generally, as exhibited by the foregoing leading cases, the trial court in the instant case did not err in its charge to the jury on the subject of consent. In this respect, the law is consistent in that parental interest in and responsibility for a minor child are subject to corresponding supervision and control. And, since the parents of such a child are responsible for his nurture and training and are liable for his maintenance and support, others will not be permitted to interfere with such relationship or with matters touching the child’s personal welfare. And, incidentally, since the plaintiff was unable to give a legal consent to the operation, there was no prejudicial error in excluding the testimony of Laird as is claimed by him in his first claim of error.
The plaintiff’s third claim of error is that the trial court erred in charging that there was a technical battery committed by Laird. The record shows that the plaintiff contacted Laird’s office on September 28, 1951; and that a loan was negotiated for *20 the plaintiff by Laird with which to finance the fee for the operation on plaintiff’s nose, which operation took place on October 5, 1951. During this interim no effort was made to secure the consent of the parents of the plaintiff for such operation and none was secured. The physical contact made by Laird with the person of the plaintiff is best described by Laird himself in his testimony. He testified in part as follows:
“And then we injected the anaesthetic, and then I proceeded to make an incision on each side at the lower part of the nasal bone, over the nasal bone, underneath the skin. That was loosened up, and I used a periosteal elevator on the periosteum over the bone, and then I used a nasal rasp to smooth down the bone.
“My incision was then carried down on the inside towards the tip of the nose and the end of the septum, and then at a right angle down toward the lip.
‘ ‘ A small portion of the end of the septum was cut off. The columella, that is, the bottom of the nose, was then sutured back to the septum. Then that which often happens when the nose is shortened, there is a more heavy tip, and I make an incision on each side of the inside of the nose through the cartilage, and a small portion of the cartilage was removed from each side.”
In view of this undisputed testimony and under the law as hereinbefore stated, there can be no question as to the commission of a technical battery on the plaintiff by Laird, and the trial court was justified in charging as to a technical battery.
The fourth and last claim of error made by Laird relates to the answer of the trial court defining nominal damages in response to a question propounded by the jury. During the course of its deliberations, the jury submitted the following question to the trial judge:
“If the jury finds that the defendant is guilty of technical assault, does this decision entitle the plaintiff to collect for damages whether or not the jury feels that damage was done? In other words, does technical assault constitute damage?”
In reply to this question, the trial judge answered and charged the jury as follows:
“In answer to this inquiry, the court will say to the jury that if they find that the defendant is guilty of technical assault, then some damage must be awarded. That damage may be *21 nominal damages, and by nominal damages or simply damages in name, a nominal amount. It may range from there up to the prayer of the petition, which is $25,000.”
Even though a surgical operation is beneficial or harmless, it is, in the absence of a proper consent to the operation, a technical assault and battery. From the nature of the inquiry of the jury, it is apparent that the application of the proper rule of damages to such a situation was the problem before it in the instant case. In such a case, if the facts are found to be so, the plaintiff may recover damages, but only nominal damages, and the defendant is entitled to have the jury so instructed.
“Nominal damages” are those recoverable where a legal right is to be vindicated against an invasion which has produced no actual loss of any kind, or where, from the nature of the case, some injury has been done, the extent of which the evidence fails to show. 16 Ohio Jurisprudence (2d), 139; First Natl. Bank of Barnesville v. Western Union Telegraph Co., 30 Ohio St., 555, 27 Am. Rep., 485.
The courts have defined “nominal damages” as some small sum of money, some nominal amount, as $1. A verdict for $100 or $200 or more does not come within the definition of nominal damages; hence a finding of nominal damages will not warrant a judgment for such amount. Broads v. Mead, 159 Cal., 765, 116 P., 46, Ann. Cas. 1912C, 1125; Mahoney v. Beatman, 110 Conn., 184, 147 A., 762, 66 A. L. R., 1121.
Clearly, the trial court was in error in stating to the jury, as it did, that nominal damages could range from a nominal amount up to $25,000, the amount prayed for in the petition.
This error was substantial and prejudicial, and for that reason alone the judgment of the Court of Appeals should be affirmed.
WbygaNDT, C. J., and ZimmermaN, J., concur in the foregoing concurring opinion.