**Mrs. Verdie Mae FRANKLIN; Verdie Mae Franklin, Administratrix of the Estate of Lonnie B. Franklin, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 92–6056.

United States Court of Appeals, Tenth Circuit.

May 5, 1993.

1494

Michael T. Braswell, of Braswell & Adjei, Oklahoma City, OK, for plaintiff-appellant.

Timothy D. Leonard, U.S. Atty., Ronny D. Pyle, Asst. U.S. Atty., Oklahoma City, OK, for defendant-appellee.

Before McKAY, Chief Judge, HOLLOWAY, and BARRETT, Circuit Judges.

BARRETT, Senior Circuit Judge.

This appeal[1] presents two somewhat thorny issues relating to the remedial scope and application of the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680. Initially, we hold that the FTCA's intentional tort exclusion bars a claim for damages based on the unauthorized performance of surgery. We then conclude, however, that the operation of that exclusion is nullified in the present context by an immunity statute dealing specifically with medical tort claims arising out of the actions of Veterans Administration (VA) personnel.

I

■ Plaintiff Verdie Mae Franklin, on her own behalf and as administratrix of the estate of her late husband, Lonnie B. Franklin, appeals from a judgment of the district court dismissing this action under the FTCA. Mrs. Franklin brought suit against the United States claiming the death of her husband was the result of unauthorized surgery performed at a VA hospital in Oklahoma City, Oklahoma. The district court held that the action was in essence one for battery and therefore barred by the intentional tort exclusion contained in 28 U.S.C. § 2680(h), which specifies that the waiver of sovereign immunity effected by the FTCA does not extend to battery claims unless the conduct of investigative or law enforcement officers is involved. We review this question of subject matter jurisdiction de novo. *See, e.g., Maddick v. United States*, 978 F.2d 614, 615 (10th Cir.1992) (armed service personnel exception to FTCA waiver); *Daniels v. United States*, 967 F.2d 1463, 1464 (10th Cir.1992) (discre-

tionary function exception (28 U.S.C. § 2680(a)) to FTCA waiver).

■ Within the scope of its waiver of sovereign immunity, the FTCA makes the United States liable on tort claims "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, and "in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b). Thus, we resolve questions of liability under the FTCA in accordance with the law of the state where the alleged tortious activity took place. *See Flynn v. United States*, 902 F.2d 1524, 1527 (10th Cir.1990). Our reading of state law in this regard is not constrained in any way by the views expressed by the district court. *See Aldrich Enters., Inc. v. United States*, 938 F.2d 1134, 1138 (10th Cir.1991) (applying *Salve Regina College v. Russell,* ─ U.S. ──, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991), to reject "local judge rule" in FTCA context).

■ In contrast to questions of liability, however, the threshold jurisdictional issue whether the government has even consented to a certain type of tort suit, particularly as that issue entails interpretation of the various exceptions to the waiver of immunity listed in § 2680(h), is a matter of federal law. *United States v. Neustadt*, 366 U.S. 696, 705–06 & n. 15, 81 S.Ct. 1294, 1299–1300 & n. 15, 6 L.Ed.2d 614 (1961); *Schwarder v. United States*, 974 F.2d 1118, 1125 (9th Cir.1992); *Talbert v. United States*, 932 F.2d 1064, 1066 (4th Cir.1991); *see also Molzof v. United States*, ─ U.S. ──, ── ─ ──, 112 S.Ct. 711, 714–15, 116 L.Ed.2d 731 (1992) (while liability issues are determined by state law, meaning of term employed in FTCA "is by definition a federal question"). In resolving this issue, we assume Congress proceeded from an understanding of established tort definitions when enacting and amending the various sections of the FTCA, and consequently look to the "traditional and commonly understood legal definition of the tort"

---

1. The parties have indicated they do not seek oral argument and, after examining the briefs and appellate record, this panel has determined unanimously that oral argument would not mate-

rially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

arguably excluded by § 2680(h). *Neustadt,* 366 U.S. at 706, 81 S.Ct. at 1300. *See Molzof,* —— U.S. at ——, 112 S.Ct. at 716; *Talbert,* 932 F.2d at 1066.

■ In the general area of unauthorized medical treatment, the traditionally recognized theory of recovery has been that of battery. *See, e.g.,* 61 Am.Jur.2d *Physicians, Surgeons, Etc.* § 197 (1981); Restatement of Torts § 13 cmt. e, § 16 cmt. a, illus. 1, § 18 cmt. e, illus. 1 (1934); Restatement (Second) of Torts § 13 cmt. c, § 18 cmt. d, illus. 1 (1965). More recently, however, courts and legislatures have recognized a particular subspecies of *negligent* unauthorized treatment, in which the patient admittedly consented to surgery, but on the basis of an inadequate disclosure of the medical considerations involved, such as potential risks, benefits, and alternative treatment options. This exception to common law battery, often referred to as the doctrine of informed consent, is evidently now also the prevailing view. *See* 61 Am.Jur.2d *Physicians, Surgeons, Etc.,* § 199; W. Page Keeton et al., *Prosser and Keeton on the Law of Torts (Prosser)* § 18, 120–21 (5th ed. 1984). Oklahoma recognizes and distinguishes these two distinct causes of action in a fairly representative manner:

> If treatment is completely unauthorized and performed without any consent at all, there has been a battery. However, if the physician obtains a patient's consent but has breached his duty to inform, the patient has a cause of action sounding in negligence for failure to inform the patient of his options, regardless of the due care exercised at treatment, assuming there is injury.

*Scott v. Bradford,* 606 P.2d 554, 557 (Okla.1979) (footnotes omitted). The distinction drawn here between traditional medical battery and the negligence theory of informed consent is not merely formalistic; the informed consent doctrine has its own unique set of proof requirements touching on duty, proximate cause, and injury, *see id.* at 558–559, which are peculiarly appropriate to a negligence claim and inapplicable to the intentional tort. *See generally Lounsbury v. Capel,* 836 P.2d 188, 193–95 (Utah Ct.App.) (discussing substantial differences between battery and negligence claims in this context), *cert. denied,* 843 P.2d 1042 (Utah 1992); *Gerety v. Demers,* 92 N.M. 396, 406–11, 589 P.2d 180, 190–95 (1978) (same).

■ In light of the intentional tort exclusion set out in § 2680(h), this distinction between the doctrines of informed consent and medical battery is critical to the cause of action under review. If the negligence theory applies, redress against the government under the FTCA is available, *see, e.g., Haley v. United States,* 739 F.2d 1502, 1503, 1506 (10th Cir.1984); *Valdiviez v. United States,* 884 F.2d 196, 198, 199–200 (5th Cir.1989); *Harbeson v. Parke Davis, Inc.,* 746 F.2d 517, 521–22 (9th Cir.1984), while if the battery theory controls, the action is specifically excluded from the government's waiver of sovereign immunity under the FTCA. *See, e.g., Doe v. United States,* 769 F.2d 174, 175 (4th Cir.1985); *Lojuk v. Quandt,* 706 F.2d 1456, 1460–61 (7th Cir.1983), *appeal after remand,* 770 F.2d 619, 622 (1985), *cert. denied,* 474 U.S. 1067, 106 S.Ct. 822, 88 L.Ed.2d 795 (1986); *Moos v. United States,* 225 F.2d 705, 706 (8th Cir.1955); *Hernandez v. United States,* 465 F.Supp. 1071, 1073–74 (D.Kan. 1979).[2]

---

**2.** A few courts have avoided this result by regarding medical batteries as only "technical" batteries that should escape the reach of § 2680(h). *See Woods v. United States,* 720 F.2d 1451, 1453–54 (9th Cir.1983); *Lane v. United States,* 225 F.Supp. 850, 852–53 (E.D.Va.1964). This minority view, *Lambertson v. United States,* 528 F.2d 441, 445 (2d Cir.) (Oakes, J., concurring) (weight of authority against limiting scope of § 2680(h) based on perceived technical nature of listed tort), *cert. denied,* 426 U.S. 921, 96 S.Ct. 2627, 49 L.Ed.2d 374 (1976), runs counter to several important principles governing construction of the FTCA, including (1) adherence to the traditional definitions Congress presumably intended for

terms borrowed from the common law (even *Lane* and *Woods* acknowledge the authoritative lineage of the medical battery tort they criticize as overly legalistic), *see Molzof,* —— U.S. at ——, 112 S.Ct. at 716; *Neustadt,* 366 U.S. at 706–07, 81 S.Ct. at 1300, (2) imposition of liability on the government in the *same manner* as that imposed on private persons (who remain liable for battery in this context), 28 U.S.C. § 2674, and (3) judicial noninterference with the legislature's exclusive authority to waive sovereign immunity (i.e., courts should not extend the government's exposure to suit through creation of judicial exceptions to express FTCA limits), *see Merrill Lynch,*

█ The factual basis for the claim asserted in the two-page complaint was that, although Mrs. Franklin and her husband had both made it clear he was not to be operated on without her prior approval, surgery ultimately was performed without either's consent. Aplt. Addendum Vol. I, tab 1. This is unquestionably a medical battery claim. The complaint neither invoked the doctrine of informed consent by name nor alleged any of the elements of the tort. Thus, even though the complaint identified plaintiff's alleged damages as the "direct and proximate result of the *negligence* of the Defendant," *id.* at 2 (emphasis added), it stated a claim for battery, not negligence, and therefore ran afoul of the § 2680(h) exclusion.

█ However, before the action was dismissed, the district court entered a pretrial order, which supersedes the complaint as the basis for disposition of the case. *See Hullman v. Board of Trustees of Pratt Community College,* 950 F.2d 665, 667 (10th Cir. 1991) ("The pretrial order supersedes the pleadings and controls the subsequent course of litigation."). By this time, a factual dispute had developed over whether Mr. Franklin had in fact signed a consent form prior to his surgery, though without the participation of his wife. In keeping with this development, Mrs. Franklin's contentions in the pretrial order included the new, alternative allegation that, even if her husband had given his written consent, it was ineffective because he lacked the mental capacity to give a valid consent at the time. Under this view, the surgery was unauthorized regardless of Mr. Franklin's actions, because Mrs. Franklin's consent was not obtained. *See generally* Aplt. Addendum Vol. I, tab 2. On appeal, Mrs. Franklin argues that the incorrect assessment of her husband's mental competence, and the consequent failure to obtain her substituted consent, constituted negli-

gence giving rise to liability unaffected by § 2680(h).

█ This argument actually raises two separate questions that must be addressed sequentially. First, should a claim of unauthorized surgery based on incapacity to consent be treated as merely one variant of the lack-of-consent theory and, thus, a medical battery, or should it be grouped with uninformed consent claims under the rubric of negligence? [3] Applying a similar medical battery/informed consent distinction from Illinois law, the Seventh Circuit held in *Lojuk v. Quandt,* 706 F.2d 1456, that by asserting "because of his mental state he was unable to consent, . . . plaintiff in effect alleges a total lack of consent, . . . [and thus] the complaint alleges a battery, rather than a tort involving negligence." *Id.* at 1460. The court concluded the United States was, consequently, immune from suit under § 2680(h). *Id.* at 1462. This result properly reflects the general rule that an incompetent consent to the intentional invasion of one's person has no effect and, consequently, absent a proper substituted consent by one authorized to act on the incompetent individual's behalf, the perpetrator remains liable for the invasion, in this case a medical battery. *See* Restatement of Torts § 892 cmt. e; Restatement (Second) of Torts § 892A cmt. b; *Prosser* § 18, 112, 114–15; *see, e.g., Younts v. St. Francis Hosp. & Sch. of Nursing, Inc.,* 205 Kan. 292, 469 P.2d 330, 336 (1970) (medical battery); *Grannum v. Berard,* 70 Wash.2d 304, 422 P.2d 812, 814–15 (1967) (same); *see also Rogers v. Sells,* 178 Okl. 103, 61 P.2d 1018, 1018–19 (1936) (surgery on minor without parental consent deemed a battery). We therefore conclude that, for purposes of § 2680(h), the allegation of incompetent consent added in the pretrial order, like the straightforward claim of lack of consent originally pled, relates to a theory of battery, not negligence. [4]

---

*Pierce, Fenner & Smith, Inc. v. Jacks,* 960 F.2d 911, 913 (10th Cir.1992).

**3.** The plaintiff's position in the pretrial order was ambiguous on the matter, characterizing the associated tort claim as battery at one point and as negligence at another. *See* Aplt. Addendum Vol. I, tab 2, at 2–4.

**4.** The attempt to avoid this conclusion by alternatively alleging that Mr. Franklin's incapacity viti-

ated his *informed consent, see* Aplt. Addendum Vol. I, tab 2, at 3, is of no avail. Because a claim of uninformed consent proceeds from the premise that consent was in fact given and focuses instead on the adequacy of pre-consent disclosures, *see, e.g., Scott,* 606 P.2d at 557, 559, the rule that incompetent consent is, in effect, no consent at all negates the negligence theory. The semantic confusion evident here derives from erroneously equating the absence of any consent

**1498**

That brings us to the second question alluded to above, which appears to be the focus of Mrs. Franklin's appellate argument, i.e., even if the immediate cause of injury is deemed a battery, can an FTCA plaintiff escape the bar of § 2680(h) by arguing that the battery was the natural consequence of prior governmental negligence, here, for example, in inadequately assessing Mr. Franklin's capacity to consent and failing to recognize the need to consult Mrs. Franklin? *See* Aplt. Brief in Chief at 4–6. The only apposite authority cited to support an affirmative answer to this question is *Shearer v. United States*, 723 F.2d 1102 (3d Cir.1983), *rev'd*, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), in which the Third Circuit held that, under certain circumstances, "if an assault and battery occurred as a 'natural result' of the government's failure to exercise due care, the assault and battery may be deemed to have its roots in negligence and therefore it is within the scope of the FTCA." *Id.* at 1107 (recognizing negligence claim for redress of fatal assault based on government's alleged failure to take reasonable preventive measures to insure decedent's safety from foreseeable attack by dangerously sick serviceman). However, a four-justice plurality of the Supreme Court reversed the Third Circuit on precisely this point,[5] and the statutory analysis in that opinion, thereafter followed by this and most other circuits, supports application of § 2680(h) in this case.

The following passage from the plurality opinion in *Shearer* has informed the interpretation of § 2680(h) in numerous subsequent cases:

> The Federal Tort Claims Act's waiver of sovereign immunity does not apply to "[a]ny claim arising out of assault [or] battery," 28 U.S.C. § 2680(h), and it is clear that [plaintiff's] claim arises out of the battery committed by Private Heard. No semantical recasting of events can alter the fact that the battery was the immediate cause of [the decedent's] death and, consequently, the basis of [plaintiff's] claim.
>
> [Plaintiff] cannot avoid the reach of § 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery. Section 2680(h) does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery. We read this provision to cover claims like [plaintiff's] that sound in negligence but stem from a battery committed by a Government employee.

473 U.S. at 54–55, 105 S.Ct. at 3039; *see, e.g., Hoot v. United States*, 790 F.2d 836, 838–39 (10th Cir.1986); *Guccione v. United States*, 847 F.2d 1031, 1034 (2d Cir.1988) (noting cases from other circuits), *cert. denied*, 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990). In *Shearer*'s terms, the argument advanced to avoid § 2680(h) in the present case should be rejected as an ineffective attempt to recast a battery claim (surgery without competent consent) as a negligent failure to prevent the battery (by not ensuring that a competent consent was obtained).

Since *Shearer*, however, the Supreme Court has recognized one category of battery-related cases that falls outside the preclusive compass of § 2680(h). Specifically, when a negligence claim against the government arises out of an incident of battery but is in no way contingent on the perpetrator's federal employment status, i.e., when the government's liability is based on its breach of a duty owed the victim that is independent of its relationship, if any, to the perpetrator, § 2680(h) does not bar recovery under the FTCA. *Sheridan v. United States*, 487 U.S. 392, 400–03, 108 S.Ct. 2449, 2454–56, 101 L.Ed.2d 352 (1988) (government liable for naval corpsmen's negligent execution of assumed responsibility over intoxicated, armed individual encountered in naval

---

(informed or not) with the presence of an uninformed consent, which is the sine qua non of the negligence theory. In any event, the pretrial order also fails to include the necessary elements of such a theory, e.g., identification of the undisclosed risk(s), plaintiff's reliance on the omission, and relation of the undisclosed risk(s) to subsequent injury. *See id.* at 559.

5. Four justices concurred on the alternative basis that the plaintiff's claim was, in any event, barred under the *Feres* doctrine, *see Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and Justice Powell did not participate in the decision. *See Shearer*, 473 U.S. at 59–60, 105 S.Ct. at 3043–44.

hospital, even though latter also happened to be corpsman and plaintiff's injury was result of his intentional tort); *see also Bembenista v. United States*, 866 F.2d 493, 497–98 (D.C.Cir.1989) (following *Sheridan* ). With this important qualification, the *Shearer* plurality's general analysis of § 2680(h) appears to remain the prevailing view. *See Westcott v. City of Omaha*, 901 F.2d 1486, 1489–90 (8th Cir.1990); *see, e.g., Kugel v. United States*, 947 F.2d 1504, 1507 (D.C.Cir.1991); *see also Sandoval v. United States*, 980 F.2d 1057, 1058–59 (5th Cir.1993).

▆▆▆▆ Here, the government would have no potential liability if not for the fact that those responsible for the intentionally tortious medical care alleged in the complaint were VA employees.[6] Indeed, the "negligent" pre-surgical conduct complained of in the pretrial order is part and parcel of the very battery claim that has implicated § 2680(h) from the outset. Consequently, the distinction drawn in *Sheridan* does not alter our conclusion, under the *Shearer* approach previously adopted by this circuit in *Hoot*,[7] that this case falls within the scope of § 2680(h).

One last matter raised by the pretrial order should be addressed briefly. The order includes two allegations of institutional-type negligence that might implicate, on a more general level, the direct responsibility of the VA hospital itself: "(i) Defendant owed a duty to [plaintiffs] to follow its procedure regarding consent," and "(j) Defendant is guilty of negligence for its failure to follow its own procedures regarding consent." Aplt. Addendum Vol. I, tab 2, at 4. Beyond these vague and conclusory allegations of negligence, however, the pretrial order fails to specify what the pertinent procedures were, why their nonobservance was material, and how all this related to Mr. Franklin's death.

▆▆▆▆ Negligence standing alone, without causal connection to cognizable injury, is not actionable. *Key v. Liquid Energy Corp.*, 906 F.2d 500, 505 (10th Cir.1990); *Johnson v. Mid–South Sports, Inc.*, 806 P.2d 1107, 1109 (Okla.1991). Thus, a pleading without allegations of proximate cause sufficient to tie the defendant's alleged negligence to the plaintiff's injury cannot support a cause of action. *See, e.g., Cunningham v. Pratt*, 392 P.2d 725, 728–29 (Okla.1964); *Schlender v. Andy Jansen Co.*, 380 P.2d 523, 527 (Okla.1962). Accordingly, the quoted allegations from the pretrial order did not introduce a new, independent claim into the proceedings and, consequently, they do not affect our analysis of this case under § 2680(h). *Cf. Janowsky v. United States*, 913 F.2d 393, 397 (7th Cir. 1990).

Accordingly, we agree with the district court that the cause of action asserted by Mrs. Franklin falls within the scope of § 2680(h). Under most circumstances, that conclusion would mandate dismissal of the case for lack of subject matter jurisdiction. *See, e.g., Davis v. United States*, 961 F.2d 53, 57 (5th Cir.1991); *Guidry v. Durkin*, 834 F.2d 1465, 1471, 1474 (9th Cir.1987). There is, however, a countervailing statutory provision that, though it has not been raised explicitly, may be considered necessarily implicated in any VA medical tort case that turns on the operation of § 2680(h). We discuss the effect of that provision in the following section of this opinion.

## II

The Federal Employees Liability Reform and Tort Compensation Act (Liability Reform Act), Pub.L. No. 100–694, 102 Stat. 4563, 4564 (1988), substantially amended 28 U.S.C. § 2679 to make the FTCA the exclusive remedial vehicle for redress of tortious

---

6. We note that neither the complaint nor the pretrial order alleges a claim for negligent hiring, training, or supervision of the VA personnel involved, and, in any event, even after *Sheridan* it is doubtful on our alleged facts whether such a claim, which would still ultimately derive from the government's employment relationship to the immediate tortfeasors, would escape the reach of § 2680(h). *See Sheridan v. United States*, 969 F.2d 72, 75 (4th Cir.1992); *Guccione v. United States*, 878 F.2d 32, 33 (2d Cir.1989), *cert. denied,*

493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990).

7. Absent sufficient reason to conclude that a prior decision of this court is no longer good law, this panel is not free to depart from circuit precedent. *United States ex rel. Rent It Co. v. Aetna Casualty & Surety Co.*, 988 F.2d 88, 90 (10th Cir.1993).

acts committed by "*any* employee of the Government while acting within the scope of his office or employment." Section 2679(b)(1) (emphasis added). Prior to passage of the Liability Reform Act, however, various individually-targeted immunity statutes served to shield particular groups of government employees from personal tort liability in the same manner, for example, 10 U.S.C. § 1089 (military medical personnel), 38 U.S.C. § 4116 (current version at 38 U.S.C. § 7316 [8]) (VA medical personnel), and 42 U.S.C. § 233 (Public Health Service medical personnel). *See United States v. Smith,* 499 U.S. 160, ——— n. 11, 111 S.Ct. 1180, 1187 n. 11, 113 L.Ed.2d 134 (1991).

The operative provision of the VA immunity statute, § 4116(a), which made the FTCA remedy the exclusive means of redress for medical-related torts, was construed to protect VA personnel from liability only when the government assumed potential liability under the FTCA. Thus, in circumstances where the government's waiver of sovereign immunity was excluded by § 2680(h) and, therefore, the injured party had no possible remedy under the FTCA, a cause of action against the responsible health worker could be maintained. *See, e.g., Lojuk v. Quandt,* 706 F.2d at 1461–62 (holding plaintiff could pursue medical battery claim against VA employee because § 2680(h) precluded FTCA remedy against government). Eventually, Congress recognized this situation—and, specifically, the example of medical battery—as a problem to be corrected:

> For many years, VA medical personnel have been protected from personal liability in medical malpractice actions arising out of allegedly negligent conduct in the furnishing of medical care or treatment to veterans. However, the Government does not extend this immunity to actions arising out of intentional conduct—so-called "intentional torts." In some instances, State law characterizes an act of medical malpractice as an intentional tort, leaving VA medical personnel potentially liable for an action for which the law intends the Government to assume liability. As an exam-

ple, if a patient consents to an operation on his left elbow, but the physician mistakenly operates on the right elbow, responsibility for this action would lie with the United States. However, if the suit was based on a theory that a battery occurred, which is defined as any contact with a person without that person's consent, the Government is not allowed to assume the employee's liability. In essence, State law, which controls the character of the action brought against VA medical personnel, could defeat the intent of the Federal law to provide such employees with immunity.

H.R.Rep. No. 100–191, 100th Cong., 2d Sess. 19 (1988), *reprinted in* 1988 U.S.C.C.A.N. 432, 450. The precise method chosen by Congress to address this development is critical to the application of § 2680(h) in this case.

Congress could have resolved the problem directly by amending § 4116(a) to (1) state specifically that personal VA medical immunity extended to intentional torts (regardless of the § 2680(h) exclusion), or (2) indicate more generally that such immunity was not contingent on the existence of a substitute remedy under the FTCA (thus making § 2680(h) irrelevant). If either of these approaches had been taken, the government's liability exposure under the FTCA would not have been affected; instead, the injured party would have been left without redress. However, Congress took an entirely different tack. Retaining the idea that extensions of VA personal immunity should be contingent on the government's correlative assumption of FTCA liability—and thereby preserving a potential remedy for the injured party—Congress chose instead "*to expand the circumstances under which the Federal government accepts liability* for the acts of its employees acting within the scope of their employment *so as to cover actions of VA health-care employees that are characterized as intentional torts* under the laws of various states." 1988 U.S.C.C.A.N. at 502–03 (emphasis added). To accomplish this, Congress added the following provision to § 4116:

---

**8.** For clarity of exposition, we shall refer to this statute throughout by its designation at the time of the events in this case. The version set out under the new designation includes no pertinent substantive changes.

(f) The exception provided in section 2680(h) of title 28 shall not apply to any claim arising out of a negligent or wrongful act or omission of any person described in subsection (a) of this section in furnishing medical care or treatment ... while in the exercise of such person's duties in or for the Department of Medicine and Surgery.

This amendment applies to pre-existing claims, such as those considered here, "as to which a final judgment ha[d] not been rendered as of the date of the enactment [May 20, 1988]." Pub.L. No. 100–322, § 203(a)(2), 102 Stat. 509.

Although we know of no case applying § 4116(f) to an FTCA claim, we have found several decisions construing its essentially identical counterpart from the military medical immunity act, 10 U.S.C. § 1089(e), in that context. These cases indicate that similar historical antecedents and congressional motives underlay inclusion of the same provision in both immunity statutes, *see also* 1988 U.S.C.C.A.N. at 450, 459, and, moreover, that the effect of the provision is to insulate the individual government employee by nullifying § 2680(h) and thereby expanding the injured party's remedy against the government under the FTCA. *See, e.g., Newman v. Soballe,* 871 F.2d 969, 972–73 (11th Cir.1989); *Keir v. United States,* 853 F.2d 398, 409–11 (6th Cir.1988); *Lojuk,* 706 F.2d at 1463; *Andrews v. United States,* 548 F.Supp. 603, 612 (D.S.C.1982), *aff'd,* 732 F.2d 366 (4th Cir. 1984). *But see Jordan v. United States,* 740 F.Supp. 810, 813 (W.D.Okla.1990) (abrogation of § 2680(h) by § 1089(e) broadened personal immunity but had no effect on government's liability for torts listed in § 2680(h)); *but see also Jones v. Newton,* 775 F.2d 1316, 1318 (5th Cir.1985) (rejecting correlation between individual immunity under § 1089(a) and government's assumption of liability under FTCA, though not addressing § 1089(e)).

As the contra citations reflect, there is a dissenting view on this question, but it is very difficult to reconcile with the legislative history recounted above and, more importantly, with the plain, unqualified language of the statute, which states that the § 2680(h) exclusion "shall not apply to *any claim* arising out of a negligent or wrongful act or omission [of the particular agency's medical personnel]" (emphasis added), not just to nonFTCA claims asserted against the individual employees. If Congress had wished to leave the government's sovereign immunity undisturbed, it could simply have extended these personal immunities directly, without abrogating the FTCA exclusion contained in § 2680(h). Furthermore, we note that the extension of personal immunities in conjunction with the correlative restriction of sovereign immunity is entirely consistent with the overall scheme of immunizing employees indirectly through *FTCA exclusivity* statutes to begin with.

Even accepting the construction of § 4116(f) advanced thus far, however, the question remains whether the subsequent passage of the more comprehensive Liability Reform Act, particularly its amendment to 28 U.S.C. § 2679(b) mentioned at the outset of this section, altered the government's FTCA liability in any pertinent respect. It is true, for instance, that this new legislation immunizes *all* federal employees without regard to either their residual liability exposure under the existing immunity statutes (such as § 1089 and § 4116) or the government's assumption of tort responsibility for their newly immunized actions (in contrast to the earlier statutes, the text and history of the Liability Reform Act reflect no intent to offset personal immunity with government liability). *See United States v. Smith,* 499 U.S. at ——–——, ——–——, 111 S.Ct. at 1184–85, 1187–89; *Aviles v. Lutz,* 887 F.2d 1046, 1048–50 (10th Cir.1989). Clearly, then, § 2679(b) does affect tort remedies against federal employees; that is its express objective. But we are concerned with its potential effect on the *government's* liability, particularly under the FTCA as extended by the existing, and formally unrepealed, immunity statutes. Since the Liability Reform Act does not directly address this matter (nor do *Smith* and *Aviles* ), we must determine whether it impliedly repealed the provision abrogating § 2680(h) that Congress had included in the prior immunity statutes.

 It is a " 'cardinal principle of statutory construction that repeals by implication are not favored.' " *AMREP Corp. v.*

*FTC*, 768 F.2d 1171, 1176 (10th Cir.1985) (quoting *United States v. United Continental Tuna Corp.*, 425 U.S. 164, 168, 96 S.Ct. 1319, 1322, 47 L.Ed.2d 653 (1976)), *cert. denied,* 475 U.S. 1034, 106 S.Ct. 1167, 89 L.Ed.2d 352 (1986). Thus, even where two statutes are not entirely harmonious, courts must, if possible, give effect to both, unless Congress clearly intended to repeal the earlier statute. *United States v. Barrett,* 837 F.2d 933, 934 (10th Cir.1988). Furthermore, regardless of priority of enactment, a specific statute, such as § 4116, should not be deemed controlled or nullified by a general statute, such as § 2679, absent a definite contrary intention. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987). The aim of the Liability Reform Act was to shore up gaps in the personal immunity afforded government employees without further broadening government liability, not to affirmatively cut back on the existing scope of the FTCA (which would include the extensions effected by § 4116(f) and its counterparts). Thus, these statutes, though not entirely kindred in spirit, are also not in irreconcilable conflict.[9] Moreover, as alluded to earlier, § 4116 was repealed and reenacted as § 7316 (with subsection (f) intact) in 1991, *see* Pub.L. No. 102–40, 105 Stat. 210, 219 (1991), so Congress acted to *preserve* this provision three years *after* passage of the Liability Reform Act. Under these circumstances, we do not think Congress has evinced any intention, much less the requisite definitive one, to nullify § 4116(f).

■ Accordingly, we hold that § 2680(h) does not bar application of the FTCA to tort claims arising out of the conduct of VA medical personnel within the scope of § 4116(f). Should Congress decide that, in light of its new approach to employee immunity reflected in the Liability Reform Act, this result is no longer a necessary or desirable accommodation for the extension of tort immunity to VA personnel, Congress can always repeal the pre-existing statutory scheme in which it expressly made that accommodation. Unless and until such action is taken, however, we must give effect to the plain language of § 4116(f).

### III

Finally, Mrs. Franklin challenges two collateral rulings issued by the district court before final disposition of the case. First, she objects to the denial of her motion for additional time to obtain an expert witness to support her belated allegations regarding informed consent/negligence. The district court deemed this request "completely untimely, speculative, prejudicial to the defendant, as well as contrary to the Court's scheduling order previously entered, upon which the parties and Court have relied." Aplt. Addendum Vol. I, tab 3, at 8. We do not take issue with this assessment. However, given our conclusion in section I that this case does not implicate negligence principles, we are constrained to hold simply that the matter is moot.

■ Mrs. Franklin's second objection is that the district court erred in granting the government's motion to reduce the ad damnum clause in the complaint pursuant to 28 U.S.C. § 2675(b). This provision states:

Action under [the FTCA] shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency [as required for exhaustion of administrative remedies under § 2675(a) ], except where the increased amount is based upon *newly discovered evidence* not reasonably discoverable at the time of presenting the claim to the federal agency, *or* upon allegation and proof of *intervening facts, relating to the amount of the claim.*

*Id.* (emphasis added).

The basis for the increased amount sought by Mrs. Franklin is her allegation that the

---

9. Indeed, the Supreme Court was asked in *Smith* to hold that the Liability Reform Act impliedly repealed § 1089 with respect to an issue of *government employee* liability. *See Smith*, 499 U.S. at ——, 111 S.Ct. at 1187. As noted above, this is a matter that—unlike government liability—Congress had expressly addressed, and quite differently, in both statutes. Nevertheless, citing the presumption against implied repeals, the Court reconciled the different approaches taken in the two statutes, leaving the first intact. *Id.* 499 U.S. at —— ——, 111 S.Ct. at 1187–88. A fortiori, *Smith* does not support implied repeal of § 4116(f) in the present context involving government liability.

hospital form purportedly reflecting Mr. Franklin's signed consent to surgery, first produced in discovery years after the events in question (the hospital evidently did not include it with other materials informally made available much earlier), has been "altered or otherwise misrepresented" by the government. Aplt. Brief in Chief at 9. Referring to the operative statutory condition underscored above, the district court denied increased damages on this basis because there was "no indication in plaintiff's response [to the government's motion] as to how this relates 'to the amount of the claim' as required by statute, or why that information would justify increased damages." Aplt. Addendum Vol. I, tab 3, at 7.

Likewise, on appeal, there is no legal argument or authority provided to support the facially dubious position that fraudulent or abusive discovery practices relate to the amount of the underlying claim in litigation. This omission alone would warrant affirmance of the district court's ruling on the point. See Phillips v. Calhoun, 956 F.2d 949, 953–54 (10th Cir.1992) (citing Pelfresne v. Village of Williams Bay, 917 F.2d 1017, 1023 (7th Cir.1990)). Moreover, we are dealing with a jurisdictional limitation, which should be strictly construed. See generally Three-M Enterprises, Inc. v. United States, 548 F.2d 293, 294–95 (10th Cir.1977) (strictly construing exhaustion requirement in § 2675 because of jurisdictional character). While the misconduct alleged here, if proven, might justify sanctions under Fed.R.Civ.P. 11 and 37, it does not, strictly speaking, relate to the damages recoverable on the medical battery claim prosecuted in this action. Indeed, even assuming the allegations could support an actionable claim for damages in fraud, such a claim has been neither pled nor exhausted and, consequently, would not be cognizable in this proceeding. See Davis v. Marsh, 807 F.2d 908, 912 (11th Cir.1987); cf. Provancial v. United States, 454 F.2d 72, 74–75 (8th Cir.1972) (rejecting plaintiff's attempt to augment FTCA claim for lack of medical attention during arrest with unexhausted claim for aggravation of injury by subsequent medical malpractice). Accordingly, the district court properly granted the government's motion to reduce the ad damnum clause in the com-

plaint to reflect the amount specified in Mrs. Franklin's administrative claim.

The judgment of the United States District Court for the Western District of Oklahoma dismissing this action is AFFIRMED in part, REVERSED in part, and the cause is REMANDED for further proceedings consistent with this opinion.