**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 6, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

DELBERT INGRAM,

        Plaintiff-Appellant,

    v.

HASHIB D. FARUQUE, M.D.; YAN
FENG, M.D.; DAVID WOOD, DONNA
DELISE; KYLE INHOFE; LT.
MICHAEL STEVENSON; CAPTAIN
TIM COLLINS;  DEPARTMENT OF
VETERAN AFFAIRS,

        Defendants-Appellees.

No. 11-6341

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:11-CV-00188-C)**

Eric D. Cotton, The Cotton Law Firm, PLLC, Edmond, Oklahoma, for Plaintiff-Appellant.

Suzanne Mitchell, Assistant United States Attorney (Sanford C. Coats, United States Attorney, and Laura M. Grimes, Assistant United States Attorney, with her on the brief), Oklahoma City, Oklahoma, for Defendants-Appellees.

Before **MATHESON, EBEL,** and **MURPHY,** Circuit Judges.

**EBEL**, Circuit Judge.

## INTRODUCTION

Plaintiff-Appellant Delbert Ingram appeals from a district court's dismissal of his claims against Defendants-Appellees ("Defendants").  Mr. Ingram sued Defendants-Appellees—Dr. Hashib D. Faruque, Dr. Yan Feng, Donna Delise, Kyle Inhofe, Lt. Michael Stevenson, and Captain Tim Collins[1]— claiming that Defendants had violated his rights under the Fourth and Fifth Amendments of the U.S. Constitution by holding him in a psychiatric ward for over twenty-four hours without his consent. Defendants filed motions to dismiss, arguing that, among other things, the district court lacked subject matter jurisdiction over the action, because the Federal Tort Claims Act ("FTCA") provided the sole remedy for Mr. Ingram's claims, and that the court therefore should not authorize a judicial remedy under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).  Fed. R. Civ. P. 12(b)(1).

[1] Mr. Ingram also initially named as defendants David Wood, director of the Oklahoma City Department of Veterans Affairs Medical Center, in his official capacity, and the Department of Veteran Affairs, but he later voluntarily dismissed these two parties.

2

The district court agreed that it lacked subject matter jurisdiction over Mr. Ingram's claims, and therefore granted Defendants' motions to dismiss. Specifically, the court concluded that Mr. Ingram had a remedy available under 38 U.S.C. § 7316 ("VA Immunity Statute"), which applies the remedy available against the United States under the FTCA to damages arising from the provision of medical services by health care employees of the Veteran's Administration ("VA"). Because of the availability of a remedy under the VA Immunity Statute, it concluded that Mr. Ingram did not have a cause of action under Bivens.

Having jurisdiction under 28 U.S.C. § 1291, we affirm on the basis that Mr. Ingram has, or has had, an adequate alternative remedy available through the VA Immunity Statute and the FTCA,[2] and it is therefore not appropriate to authorize a Bivens remedy for Mr. Ingram. Accordingly, the district court did not err in ruling that it lacked subject matter jurisdiction over Mr. Ingram's claims.

**BACKGROUND**

I.      **Factual Background**

---

[2] Plaintiff did not assert a claim under the FTCA and therefore the district court did not express any opinion whether Mr. Ingram's potential FTCA claim might now be barred for procedural or timeliness reasons, or otherwise. Likewise, we do not address that issue.

Mr. Ingram is an employee at the Oklahoma City Department of Veterans Affairs Medical Center ("VAMC"). At the time of the incidents resulting in this appeal, VAMC police received a report from one of Mr. Ingram's coworkers, stating that Mr. Ingram had said that he had been thinking about killing his supervisor. Defendant Captain Collins (VAMC's Assistant Chief of Police) reported the threat to Dr. Nasreen Bukhari (not a party to this action), who recommended that Mr. Ingram receive a psychiatric assessment. Dr. Bukhari informed Defendant Inhofe (VAMC's Chief of Human Resources) and Defendant Delise (VAMC's Acting Assistant Director) of the situation. Mr. Inhofe and Ms. Delise decided to talk to Mr. Ingram about the reported threat and ask him to go to the Emergency Room for evaluation, in accordance with Dr. Bukhari's instructions. Mr. Ingram agreed to go to the emergency room with Mr. Inhofe and Ms. Delise. Captain Collins directed Defendant Lt. Stevenson (a VAMC police officer) to escort Mr. Inhofe, Ms. Delise, and Mr. Ingram to the emergency room.

In the emergency room, Mr. Inhofe and Ms. Delise accompanied Mr. Ingram to a padded isolation room. Subsequently, another physician, Dr. Karunesh Singhal (not a party to this action) filled out an affidavit stating that Mr. Ingram "has threatened to assault his supervisor and in my evaluation is having homicidal ideation," and that on that basis, Mr. Ingram was sufficiently ill "that immediate emergency action [was] necessary." Aplt. App. at 78. When Mr. Ingram attempted to leave the emergency room,

4

Lt. Stevenson informed him that, although he was not under arrest, he was not free to leave the emergency room. Mr. Ingram asserts that Lt. Stevenson said this "with his hand on his firearm," and that after making this statement, Lt. Stevenson shut and locked the door to the isolation room. Aplt. Br. 4.

Mr. Inhofe and Ms. Delise waited with Mr. Ingram until Defendant Dr. Faruque (a VAMC staff psychiatrist) arrived. After Dr. Faruque arrived, he examined Mr. Ingram. During the examination, Mr. Ingram admitted saying something about "doing foolish things to [his supervisor]," but denied having the intent to hurt or kill her. Aplt. App. at 104. Dr. Faruque's report following the examination recommended "[i]npatient admission to provide safe environment and further assessment."[3] Aplt. App. at 104. Mr.

---

[3] Mr. Ingram claims that Dr. Faruque informed Mr. Ingram that even though he "found that Plaintiff's thought content had no suicidal, violent or paranoid ideations, Defendant Faruque informed Plaintiff 'in order to save my job and clear your name, I am going to have to commit you to the psychiatric ward.'" Aplt. App. at 10. Mr. Ingram further contends that Dr. Faruque told him that "[a]s of this moment you have no say in this matter, you have no rights," and that "[y]ou are either going voluntarily or by force." Id. at 10-11. While Dr. Faruque's report following the examination did state that Mr. Ingram's "[t]hought content has no suicidal, violent or paranoid ideations," the report also recommended intake for further assessment, Id. at 104, and his affidavit before the district court stated that he "determined that, because of the severity of the reported threats and his obvious agitation, Mr. Ingram required a more thorough psychiatric evaluation than I could perform in the limited time available to me in the Emergency Room setting," id. at 102.

5

Ingram agreed to be admitted for further evaluation. Dr. Faruque's report states that he shared this plan with Dr. Singhal, and that he "emphasized that [Mr. Ingram] is not to leave [the] ER except for transfer to [the psychiatric ward]," and "suggested that [Mr. Ingram] be transferred from [the] ER to [the psychiatric ward] under police escort." Id. at 105.

After arriving in the psychiatric ward, Defendant Dr. Feng (another VAMC staff psychiatrist) interviewed Mr. Ingram for the inpatient admission evaluation. Mr. Ingram denied making threats about his supervisor and stated that he wished to leave the hospital. But Dr. Feng informed Mr. Ingram that "because of the report of the threat and the Third Party Affidavit [signed by Dr. Singhal], [she] was obligated to conduct an investigation to determine whether he and other people would be safe if he were discharged from the hospital." Id. at 106. She told Mr. Ingram that he could voluntarily sign himself in for assessment, or that she would initiate the paperwork to obtain an Emergency Order of Detention.

After this conversation, Mr. Ingram agreed to admit himself to the hospital, and signed a voluntary consent form. But subsequently, although he repeatedly requested to leave, Mr. Ingram was held in the psychiatric ward for over twenty-four hours before being medically cleared and released.

## II. Procedural Background

Mr. Ingram subsequently filed an action against Defendants in their individual capacities. He asserted that they had collectively violated his rights under the Fourth and Fifth Amendments by detaining him against his will, and he sought a remedy. Defendants filed motions to dismiss, arguing that, among other things, the court lacked subject matter jurisdiction over Mr. Ingram's claims. See Fed. R. Civ. P. 12(b)(1).

A primary argument of the Defendants was that Mr. Ingram should not be permitted to pursue a cause of action under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), because under the VA Immunity Statute, the FTCA provided the sole remedy for his claims. The district court agreed, concluding that Mr. Ingram's claims fell under the VA Immunity Statute, and that he therefore could not bring an action under Bivens. Accordingly, it ruled that it lacked subject matter jurisdiction over Mr. Ingram's claims, and dismissed the claims against all Defendants without prejudice. Within thirty days, Mr. Ingram filed a motion for reconsideration, which was denied by the district court. Mr. Ingram timely appeals.

**STANDARD OF REVIEW**

Rule 12(b)(1) motions can take the form of either a "facial" or a "factual" attack on the court's subject matter jurisdiction. Stuart v. Colo. Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001). Where the party challenging subject-matter jurisdiction mounts a facial attack, "the district court must accept the allegations in the complaint as

7

true." Id. But if the challenging party brings a factual attack by "go[ing] beyond allegations contained in the complaint and challeng[ing] the facts upon which subject matter jurisdiction is based . . . [the] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." Id. (internal quotation marks omitted). Here, the district court determined that it would "consider the materials appended to the parties' briefs," Aplt. App. at 166; thus, we will treat this as a factual attack and likewise consider the materials presented by the parties to the district court.

"We review de novo . . . the district court's determination of subject-matter jurisdiction . . . ." Rio Grande Silvery Minnow (Hybognathus Amarus) v. Bureau of Reclamation, 599 F.3d 1165, 1175 (10th Cir. 2010). Moreover, "[w]e review the [district] court's findings of jurisdictional facts for clear error," and "[a] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Id. (second alteration in original) (internal quotation marks omitted). But we will "view the evidence in the light most favorable to the district court's ruling." Id. (internal quotation marks omitted). Thus, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse." Id. (internal quotation marks omitted).

8

**DISCUSSION**

In <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), the U.S. Supreme "Court recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009) (internal quotation marks omitted). In <u>Bivens</u>, the Court "held that a victim of a Fourth Amendment violation by federal officers may bring suit for money damages against the officers in federal court." <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 66 (2001) (citing <u>Bivens</u>, 403 U.S. 388). Following <u>Bivens</u>, the Supreme Court has authorized actions under <u>Bivens</u> on only two occasions: first, the Court authorized a cause of action under <u>Bivens</u> to redress a violation of the equal protection component of the Due Process Clause of the Fifth Amendment, <u>see</u> <u>Davis v. Passman</u>, 442 U.S. 228 (1979), and second, the Court authorized a <u>Bivens</u> remedy for the estate of a prisoner who had allegedly died as the result of government officials' deliberate indifference to his medical needs, in violation of his rights under the Eighth Amendment, <u>see</u> <u>Carlson v. Green</u>, 446 U.S. 14 (1980).

But since the Supreme Court's last decision to authorize a <u>Bivens</u> remedy in 1980, the Court has "refused to extend <u>Bivens</u> liability to any new context or new category of defendants." <u>Malesko</u>, 534 U.S. at 68. Indeed, even though the "Court has had to decide in several different instances whether to imply a <u>Bivens</u> action[,] . . . in each instance it

9

has decided against the existence of such an action." Minneci v. Pollard, 132 S. Ct. 617, 622 (2012).

The standards for determining whether a Bivens remedy is appropriate have evolved over time. In Green, the Court explained that a Bivens action is available unless (1) "defendants demonstrate special factors counselling hesitation in the absence of affirmative action by Congress," or (2) "defendants show that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective." 446 U.S. at 18–19 (emphasis omitted). But since Green, the Supreme Court has relaxed these requirements, and has declined to fashion a Bivens remedy, even where statutory remedies may not be equally effective.

For instance, in Bush v. Lucas, the Court explained that the question whether a Bivens cause of action is available "cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff." 462 U.S. 367, 388 (1983). In Bush, even though the Court "assum[ed] . . . a federal right ha[d] been violated and Congress ha[d] provided a less than complete remedy for the wrong," id. at 373, the Court declined to fashion a Bivens remedy for a federal employee who claimed that his superior had violated his rights under the First Amendment, id. at 368. The Court held that because the claim at issue "ar[o]se out of an employment relationship that [was]

10

governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, it would be inappropriate for [the] Court to supplement that regulatory scheme with a new nonstatutory damages remedy." Id. at 367.

Similarly, in Schweiker v. Chilicky, the Court stated that "[t]he absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." 487 U.S. 412, 421-22 (1988). Indeed, the Court held that "the concept of 'special factors counselling hesitation in the absence of affirmative action by Congress' has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent." Id. at 423. Accordingly, it declined to authorize a Bivens remedy to address the improper denial of Social Security disability benefits, id. at 414, even though the Court acknowledged that "Congress ha[d] failed to provide for 'complete relief,'" id. at 425, and "[t]he creation of a Bivens remedy would obviously offer the prospect of relief for injuries that must now go unredressed," id.

Consistent with Bush and Schweiker, in its recent jurisprudence, the Supreme Court has generally prescribed two steps to apply when determining whether to recognize a Bivens remedy. See Wilkie v. Robbins, 551 U.S. 537, 550 (2007); accord Minneci, 132 S. Ct. at 623. First, "[t]here is the question whether any alternative, existing process for

11

protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." Wilkie, 551 U.S. at 550. Second, "even in the absence of an alternative, a Bivens remedy is a subject of judgment;" and therefore "the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed . . . to any special factors counseling hesitation before authorizing a new kind of federal litigation." Id.

In determining whether there is a Bivens remedy available to Mr. Ingram, we will first consider whether the VA Immunity Statute provides an alternative, existing process that amounts to a convincing reason to refrain from creating a new Bivens remedy. We conclude that it does; specifically, we hold that the text of the VA Immunity Statute creates an exclusive remedy that precludes a Bivens claim. We then consider whether Mr. Ingram's claims fall within the scope of the VA Immunity Statute, such that he is precluded from bringing a cause of action under Bivens. We conclude that they do. Mr. Ingram therefore may not pursue a cause of action under Bivens. Accordingly, we need not consider whether there are other "special factors counselling hesitation before authorizing" a Bivens remedy. See id.

I.      **The VA Immunity Statute Provides an Alternative, Existing Process That Precludes a Bivens Remedy**

12

Mr. Ingram argues that he should be allowed to pursue a cause of action under Bivens, because he contends that Defendants held him against his will in violation of his rights under the Fourth and Fifth Amendments to the U.S. Constitution. But the district court determined that the VA Immunity Statute provided Mr. Ingram with a remedy for his claims, such that he did not have available a cause of action under Bivens. This section will first set out the legal framework for analyzing the VA Immunity Statute, and will then consider whether the Statute precludes a cause of action under Bivens.

## A. The VA Immunity Statute

As context for analyzing the VA Immunity Statute, "[t]he doctrine of sovereign immunity prohibits suits against the United States except in those instances in which it has specifically consented to be sued." Fent v. Okla. Water Res. Bd., 235 F.3d 553, 556 (10th Cir. 2000) (internal quotation marks omitted). "The FTCA constitutes a limited waiver of the federal government's sovereign immunity from private suit." Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d 840, 852 (10th Cir. 2005). "When federal employees are sued for damages for harms caused in the course of their employment, the [FTCA] generally authorizes substitution of the United States as the defendant." Hui v. Castaneda, 559 U.S. 799, 130 S. Ct. 1845, 1848 (2010) (citation omitted). And "[t]he prerequisite for liability under the FTCA is a 'negligent or wrongful act or omission of any employee of the [Government] while acting within the scope of his

13

office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" Id. at 1853 n.8 (quoting 28 U.S.C. § 1346(b)). In other words, the FTCA allows the United States to be sued for claims arising out of negligent or wrongful acts or omissions of its employees, when such employees are acting within the scope of their duties. 28 U.S.C. § 1346(b)(1).

The VA Immunity Statute applies the remedy available against the United States under the FTCA to damages arising from the provision of medical services by health care employees of the VA. See 38 U.S.C. § 7316(a)(1), (f). Section 7316(a)(1) states:

> The remedy . . . against the United States provided by sections 1346(b) and 2672 of title 28 . . . for damages for personal injury, including death, allegedly arising from malpractice or negligence of a health care employee of the Administration in furnishing health care or treatment while in the exercise of that employee's duties in or for the Administration shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the health care employee (or employee's estate) whose act or omission gave rise to such claim.

38 U.S.C. § 7316(a)(1).

There are some exceptions to the FTCA's waiver of sovereign immunity. Specifically, 28 U.S.C. § 2680(h) states that the provisions of the FTCA

> shall not apply to . . . [a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights . . . .

14

28 U.S.C. § 2680(h).  Thus, under the general provisions of the FTCA, the United States

cannot be sued for claims arising out of these enumerated intentional torts.  See id.  But

in the context of the VA Immunity Statute, § 7316(f) states:

> The exception provided in section 2680(h) of title 28 shall not apply to any claim arising out of a negligent or wrongful act or omission of any person described in subsection (a) in furnishing medical care or treatment (including medical care or treatment furnished in the course of a clinical study or investigation) while in the exercise of such person's duties in or for the Administration.

38 U.S.C. § 7316(f).  In other words, "§ 2680(h) does not bar application of the FTCA to

[intentional] tort claims arising out of the conduct of VA medical personnel within the

scope of" 38 U.S.C. §7316(f).  Franklin v. United States, 992 F.2d 1492, 1502 (10th Cir.

1993).[4]

## B.  The VA Immunity Statute Provides an Exclusive Remedy

We now consider whether the VA Immunity Statute provides an alternative,

existing process that amounts to a convincing reason to refrain from creating a new

---

[4] In Franklin, we analyzed 38 U.S.C. § 4116, which is the precursor to the statute at issue in this case (38 U.S.C. § 7316).  992 F.2d at 1500 n.8, 1502 (explaining that "§ 4116 was repealed and reenacted as § 7316," and that "[t]he version set out under the new designation includes no pertinent substantive changes").  But the relevant language that was formerly contained in § 4116(a) is substantially similar to the language currently contained in §7316(a); thus, our holding in Franklin applies equally to 38 U.S.C. § 7316.

15

Bivens remedy. We conclude that the Statute provides an exclusive remedy that precludes the creation of a remedy under Bivens.

In our analysis, there are two relevant provisions of the VA Immunity Statute at issue—§ 7316(a)(1) and § 7316(f). We will consider each in turn.

### 1.        Section § 7316(a)(1)

The Supreme Court has determined that language similar to that contained in § 7316(a)(1) creates an exclusive cause of action that precludes a Bivens remedy. In Hui, the Supreme Court concluded that 42 U.S.C. § 233(a) precluded a Bivens action against U.S. Public Health Service ("PHS") personnel. 130 S. Ct. at 1848. In relevant part, § 233(a) provides:

> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28 . . . for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

42 U.S.C. § 233(a).

As background, in Hui, a man was detained by U.S. Immigration and Customs Enforcement at the San Diego Correctional Facility. 130 S. Ct. at 1848. While there, he sought a biopsy for a lesion, but a biopsy was never provided. Id. at 1848–89. After his

16

release from prison, later biopsy results confirmed that the detainee was suffering from cancer, and after unsuccessful treatment, he died. Id. at 1849.

Before his death, the detainee brought a cause of action under Bivens, suing PHS personnel for a violation of his constitutional rights. Id. at 1849. PHS personnel moved to dismiss on the grounds that "§ 233(a) g[a]ve[] them absolute immunity from Bivens actions by making a suit against the United States under the FTCA the exclusive remedy for harms caused by PHS personnel in the course of their medical or related duties." Id. at 1849-50. The district court denied the motion, and the Ninth Circuit affirmed. Id. at 1850. Among other things, the Ninth Circuit applied the holding in Green that "a Bivens remedy is unavailable only when an alternative remedy is both expressly declared to be a substitute and can be viewed as equally effective," and concluded that "§ 233(a) d[id] not expressly make the remedy under the FTCA a substitute for relief under Bivens." Id. Moreover, "[f]or essentially the reasons given in [Green], the [Ninth Circuit] Court of Appeals also determined that the FTCA remedy is not equally effective as a Bivens remedy." Id. (citation omitted).

The Supreme Court reversed the Ninth Circuit's decision, holding that the text of § 233(a) precluded a Bivens action against petitioners. Id. at 1855. Specifically, the Court concluded that § "233(a) makes the FTCA remedy against the United States 'exclusive of any other civil action or proceeding' for any personal injury caused by a

17

PHS officer or employee performing a medical or related function 'while acting within the scope of his office or employment,'" and it held that "[b]ased on the plain language of § 233(a) . . . PHS officers and employees are not personally subject to Bivens actions for harms arising out of such conduct." Id. at 1848.

In this case, the language of 38 U.S.C. § 7316(a)(1) mirrors the language of § 233(a). Both 38 U.S.C. § 7316(a) and 42 U.S.C. § 233(a) state that, under these provisions, "[t]he remedy against the United States provided by sections 1346(b) and 2672 of title 28 . . . shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the . . . employee . . . whose act or omission gave rise to [the] claim." 38 U.S.C. § 7316(a)(1) (emphases added); accord 42 U.S.C. § 233(a). In Hui, the Court stated:

> By its terms, § 233(a) limits recovery for such conduct to suits against the United States. The breadth of the words "exclusive" and "any" supports this reading, as does the provision's inclusive reference to all civil proceedings arising out of "the same subject-matter."

130 S. Ct. at 1851. The same is true here; the wording of § 7316(a)(1) indicates that the VA Immunity Statute is an exclusive remedy.

Mr. Ingram argues the Supreme Court's holding in Carlson v. Green requires that he be allowed to proceed with a cause of action under Bivens. In Green, a respondent sued on behalf of her deceased son's estate, alleging that he had died from injuries

18

inflicted by federal prison officials in violation of his rights under the Eighth Amendment. 446 U.S. at 16. In authorizing a cause of action under Bivens, the Court rejected prison officials' argument that the remedy available under the FTCA precluded respondent's Bivens claim. Id. at 19-20. Although both Green and Mr. Ingram's case involve the question whether the remedy available under the FTCA precludes a Bivens claim, Green does not control this case.

Green's claim against federal prison officials for alleged violations of his Eighth Amendment rights did not implicate the VA Immunity Statute. Thus, the Court in Green was not considering the VA Immunity Statute when it determined that the FTCA did not foreclose a cause of action under Bivens. And, the Supreme Court recognized in Hui that some statutory provisions may make the FTCA an exclusive remedy, such that it is not appropriate for courts to authorize a cause of action under Bivens. 130 S. Ct. at 1848. Thus, although there may be circumstances where the availability of a remedy under the FTCA may not foreclose a Bivens action, Green, 446 U.S. at 19–20, other statutory provisions relating to the FTCA do preclude such a remedy. The Supreme Court has held that one such provision is 42 U.S.C. § 233(a). Hui, 130 S. Ct. at 1855. Similarly, we hold that § 7316(a)(1) makes the VA Immunity Statute an exclusive remedy and therefore precludes a claim under Bivens.

2. **Section § 7316(f)**

19

Section 7316(f) expands § 7316(a)(1) to provide a remedy under the FTCA for intentional torts arising in the context of VA health care employees providing medical care or treatment. See 38 U.S.C. § 7316(f). This provision was added to the VA Immunity Statute in 1988.[5] Pub. L. 100-322. Under § 7316(f), the exception to the waiver of sovereign immunity for certain intentional torts that is contained in 28 U.S.C. § 2680(h) does not apply to "any claim arising out of a negligent or wrongful act or omission of any . . . [health care employee of the VA] in furnishing medical care or treatment . . . while in the exercise of such person's duties in or for the Administration." 38 U.S.C. § 7316(f). Thus, § 7316(f) allows the United States to be sued under the FTCA for certain intentional torts committed by VA health care employees in the context of providing medical care. See Franklin, 992 F.2d at 1502.

In Franklin, we previously considered the purpose and effect of subsection (f). Specifically, we explained that, prior to the amendment of the VA Immunity Statute to include subsection (f), "in circumstances where the government's waiver of sovereign immunity was excluded by § 2680(h) and, therefore, the injured party had no possible

---

[5] At the time subsection (f) was added, the VA Immunity Statute was codified at 38 U.S.C. § 4116.

20

remedy under the FTCA, a cause of action against the responsible health worker could be maintained." Id. at 1500.

This had created a difficulty, because, depending on state law, malpractice actions might be based on a theory of negligence or a theory of battery. See id. And unless a statutory exception applies, a person cannot bring a claim for battery under the FTCA. 28 U.S.C. § 2680(h). Thus, under the FTCA generally, "[i]f the negligence theory [of malpractice] applies, redress against the government under the FTCA is available, while if the battery theory controls, the action is specifically excluded from the government's waiver of sovereign immunity under the FTCA." Franklin, 992 F.2d at 1496 (citations omitted). Before the enactment of § 7316(f), this was true under the VA Immunity Statute. But "[e]ventually, Congress recognized this situation—and, specifically, the example of medical battery—as a problem to be corrected." Id. at 1500. To illustrate this point, we quoted in Franklin the following legislative history for § 7316(f):

> For many years, VA medical personnel have been protected from personal liability in medical malpractice actions arising out of allegedly negligent conduct in the furnishing of medical care or treatment to veterans. However, the Government does not extend this immunity to actions arising out of intentional conduct—so-called "intentional torts." In some instances, State law characterizes an act of medical malpractice as an intentional tort, leaving VA medical personnel potentially liable for an action for which the law intends the Government to assume liability. As an example, if a patient consents to an operation on his left elbow, but the physician mistakenly operates on the right elbow, responsibility for this action would lie with the United States. However, if the suit was based on

21

a theory that a battery occurred, which is defined as any contact with a person without that person's consent, the Government is not allowed to assume the employee's liability. In essence, State law, which controls the character of the action brought against VA medical personnel, could defeat the intent of the Federal law to provide such employees with immunity.

Id. at 1500 (quoting H.R.Rep. No. 100–191, 100th Cong., 2d Sess. 19 (1988), reprinted in 1988 U.S.C.C.A.N. 432, 450).

Although Congress was specifically concerned with medical battery, the remedy available under § 7316(f) is not limited to battery. Instead, by rendering 28 U.S.C. § 2680(h) inapplicable, § 7316(f) allows the United States to be sued for "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," 28 U.S.C. 2680(h), when such claims arise in the context of VA health care employees providing medical care or treatment, 38 U.S.C. § 7316(f). As we noted in Franklin, Congress could have resolved the problem in a variety of ways, and it need not have waived sovereign immunity for all of the intentional torts listed in 28 U.S.C. § 2680(h), but "Congress chose . . . 'to expand the circumstances under which the Federal government accepts liability for the acts of its employees acting within the scope of their employment so as to cover actions of VA health-care employees that are characterized as intentional torts under the laws of various states.'" Franklin, 992 F.2d at 1500 (emphasis in original) (quoting 1988 U.S.C.C.A.N. at 502–03)). Thus, in the context of VA health care employees providing medical care or

22

treatment, § 7316(f) provides a remedy under the FTCA for claims of intentional torts, including false arrest and false imprisonment.

In sum, § 7316(f) provides alternative, existing process for protecting the interests implicated in this appeal, see Wilkie, 551 U.S. at 550, by expanding the scope of § 7316(a)(1) and providing a remedy under the FTCA for intentional torts arising in the context of VA health care employees providing medical care or treatment. 38 U.S.C. § 7316(f). Section 7316(f) therefore "insulate[s] the individual government employee by nullifying § 2680(h) and thereby expanding the injured party's remedy against the government under the FTCA." Franklin, 992 F.2d at 1501.

For the foregoing reasons, we conclude that there is an adequate alternative remedy available under the VA Immunity Statute; indeed, the Statute provides an exclusive remedy that precludes a cause of action under Bivens for claims that fall within the scope of the Statute. Accordingly, we now consider whether Mr. Ingram's claims fall within the scope of the VA Immunity Statute.

**II.     Mr. Ingram's Claims Fall Within the Scope of the VA Immunity Statute**

Mr. Ingram argues that his claims do not fall within the scope of the VA Immunity Statute for two reasons. First, he contends that the VA Immunity Statute is not implicated, because his claims do not arise from malpractice or negligence. Specifically,

23

he "alleges that his confinement was not the result of medical evidence, evaluation or opinion, but instead was a result of intentional acts of Defendants unrelated to any medical opinion of physicians." Aplt. Br. at 13. Second, he also argues that Defendants are not qualified for immunity under the Statute because they do not fall within the definition of "other supporting personnel."

As background, Mr. Ingram alleges in his complaint that he was "wrongfully and unlawfully detained and held in the psychiatric ward as a result of the actions of Defendant Furuque [sic], Defendant Feng, . . . Defendant DeLise [sic], Defendant Inhofe, Defendant Lt. Stevenson, and Defendant Captain Collins, who were acting within the course and scope of their employment with [the VA]." Aplt. App. at 12. He goes on to argue that: "Defendants conducted an objectively unreasonable and insufficient investigation to determine whether there was a sufficient basis for holding Plaintiff against his will in the psychiatric ward," and that "[b]ased upon the actions, assertions, and statements of Defendants, Plaintiff was coerced into signing the consent for admission form against his will." Id. He also contends that "[t]he conduct of Defendants resulted in Plaintiff Delbert Ingram being falsely, maliciously, and unlawfully detained and held in the psychiatric ward." Id. And finally, he asserts that "Defendants Furuque [sic], Feng, . . . DeLise [sic], Inhofe, Lt. Stevenson, and Captain Collins' actions were [done with] willful, wanton, intentional, and . . . reckless disregard." Id. at 15.

24

As to Mr. Ingram's first argument, it is plain that his claims fall within the scope of the VA Immunity Statute. As discussed above, the VA Immunity Statute immunizes VA health care employees for "damages . . . allegedly arising from malpractice or negligence of a health care employee of the [VA]," 38 U.S.C. § 7316(a)(1), as well as claims for "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," 28 U.S.C. § 2680(h), that "aris[e] out of a negligent or wrongful act or omission of any . . . [health care employee] in furnishing medical care or treatment," 38 U.S.C. at § 7316(f). Mr. Ingram's claims arise from the medical care he received at the VAMC. Specifically, his claims indicate either that Defendants' actions were negligent and fell below an objective standard of care, which would implicate a claim of malpractice, see Id. § 7316(a)(1), or that they were wrongful acts or omissions that would implicate a claim for an intentional tort, within the context of providing medical care or treatment, see 38 U.S.C. §§ 2680(h) & 7316(f). And because he argues that he was unlawfully detained and held as a result of Defendants' "willful, wanton, intentional, and . . . reckless disregard," Aplt. App at 15, it is evident that he is arguing that Defendants committed an intentional tort—specifically, false arrest or false imprisonment—for which a remedy under the FTCA is provided by § 7316(f). Thus, his claims fall within the scope of the VA Immunity Statute.

25

As to Mr. Ingram's second argument, we conclude that the district court did not err in determining that the Defendants were immune to suit as "health care employee[s]" within the meaning of the VA Immunity Statute. Section 7316(a)(2) provides:

> the term "health care employee of the Administration" means a physician, dentist, podiatrist, chiropractor, optometrist, nurse, physician assistant, expanded-function dental auxiliary, pharmacist, or paramedical (such as medical and dental technicians, nursing assistants, and therapists), or other supporting personnel.

38 U.S.C. § 7316(a).

Mr. Ingram argues that Defendants are not "other supporting personnel," but we need not consider that argument as to Defendants Dr. Faruque and Dr. Feng, because both doctors are "physicians"—specifically, VAMC staff psychiatrists. The district court found that the actions of both Dr. Faruque and Dr. Feng

> were actions relevant to the provision of medical care[,] . . . . that each action was undertaken based on decisions and information pertinent to Defendants as a result of their specialized education and training in the field of medicine/psychology[,] . . . . [and] that their contact with Plaintiff arose as a result of the need for an evaluation by a medical professional.

Aplt. App. at 167. We agree. Because both doctors are physicians and their interactions with Mr. Ingram were in the scope of their duties and in the course of furnishing medical care, see 38 U.S.C. § 7316(a), (f), they are entitled to immunity under the VA Immunity Statute.

26

As to the other Defendants, the district court determined that they were acting as supporting personnel to medical providers in their interactions with Mr. Ingram. Section 7316(a)(2) does not provide a definition for "other supporting personnel." But the phrase is not limited to "medical personnel"—in other words, it is not necessary under the statute that "other supporting personnel" must themselves be qualified to practice medicine or be regularly employed as medical personnel. See 38 U.S.C. § 7316(a)(2). Instead, the statute defines "health care employee" as

> physician, dentist, podiatrist, chiropractor, optometrist, nurse, physician assistant, expanded-function dental auxiliary, pharmacist, or paramedical (such as medical and dental technicians, nursing assistants, and therapists), or other supporting personnel.

Id. (emphases added). Thus, employees of the VA may be "health care employee[s]" under the statute if they are employed as one of the listed types of medical personnel, or if they are providing support to such medical personnel. See id. And for other supporting personnel to qualify for immunity under § 7316(a)(1) or § 7316(f), they must provide support for medical personnel, id. § 7316(a)(2), "in furnishing medical care or treatment . . . while in the exercise of [their] duties in or for the Administration," id. § 7316(f); accord Id. § 7316(a)(1).

Here, the district court found that "[b]ut for the perceived need to provide medical care to Plaintiff in the form of psychiatric care, neither Defendants Stevenson nor Collins

27

would have had any contact with Plaintiff." Similarly, it found that "Defendants DeLise's [sic] and Inhofe's interaction with Plaintiff arose solely at the behest of or in support of the medical personnel who were evaluating Plaintiff's condition." Aplt. App. at 170. Viewing the evidence in the light most favorable to the district court's ruling, the court's findings regarding the interactions between Mr. Ingram and Defendants Delise, Inhofe, Stevenson, and Collins were not clearly erroneous. Rio Grande Silvery Minnow, 599 F.3d at 1175. Each of these Defendants testified that he or she was acting within the scope of his or her duties and pursuant to instructions from medical personnel. Accordingly, the record before the district court supports that these Defendants interacted with Mr. Ingram only to provide support to medical personnel in furnishing medical care to Mr. Ingram.

Mr. Ingram's sole argument as to why Defendants could not have been other "supporting personnel," is that they were acting under the direction of Dr. Bukhari, and Mr. Ingram contends that Dr. Bukhari did not "t[ake] any action that could give rise to a malpractice claim."[6] Aplt. Br. at 16. Mr. Ingram misses the point. Dr. Bukhari is not a

---

[6] Mr. Ingram does not make any other arguments as to why Defendants Inhofe, Delise, Stevenson, and Collins are not "other supporting personnel" under the VA Immunity
Continued . . .

28

party to this action, and it is irrelevant whether Mr. Ingram's allegations would give rise to a cause of action against Dr. Bukhari under the VA Immunity Statute. The only relevant question to consider in determining whether the four Defendants are other "supporting personnel" is whether they were providing support to medical personnel in furnishing health care or treatment. Id. Because their interactions with Mr. Ingram took place solely in the context of providing support to medical personnel in furnishing medical care to Mr. Ingram, we agree that they are "other supporting personal" under the VA Immunity Statute.

In sum, Mr. Ingram's claims fall within the scope of the VA Immunity Statute, and the Defendants fall within the Statute's definition of health care employees. And because we hold that the FTCA provides an alternative, existing process for addressing Mr. Ingram's interests that is exclusive of any other cause of action arising from the same subject matter, Mr. Ingram may not pursue a cause of action under Bivens. For that

_____

Cont.

Statute, and "[t]his court . . . will not craft a party's arguments for him," Perry v. Woodward, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999).

29

reason, the district court did not err in concluding that it lacked subject-matter jurisdiction to consider Mr. Ingram's claims.

## CONCLUSION

Mr. Ingram has an alternative, existing process for protecting his interests available through the VA Immunity Statute. And the language of the Statute provides for an exclusive remedy that precludes Mr. Ingram from pursuing a cause of action under Bivens. Because Mr. Ingram's claims fall within the scope of the VA Immunity Statute, we AFFIRM the district court's decision concluding that it lacked subject matter jurisdiction and dismissing Mr. Ingram's claims without prejudice.