**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 16, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

RICHARD TURNER,

     Plaintiff - Appellant,

v.

PHILLIPS 66 COMPANY, a corporation,

     Defendant - Appellee.

No. 19-5030
(D.C. No. 4:18-CV-00198-GKF-FHM)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **O'BRIEN**, and **MATHESON**, Circuit Judges.
_____

Richard Turner appeals the grant of summary judgment in favor of Phillips 66

Company on his claims under the Americans with Disabilities Act (ADA), 42 U.S.C.

§§ 12101-12213.[1]  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.[2]

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] In 2008, Congress amended the ADA by passing the ADA Amendments Act ("ADAAA").  In this opinion, we refer to the amended Act simply as "the ADA."

[2] The district court also remanded to state court Mr. Turner's claim under the Oklahoma Standards for Workplace Drug and Alcohol Testing Act, Okla. Stat. tit. 40, §§ 551-565.  Mr. Turner does not challenge this ruling on appeal.  The remand

## I. BACKGROUND

In 2017, Mr. Turner worked for Phillips 66 as a crane operator at the company's refinery in Ponca City, Oklahoma. He was subject to and aware of Phillips 66's substance abuse policy, which allowed for random and post-accident drug testing for "Cannabinoids, Cocaine, Opiates, Phencyclidine (PCP) and Amphetamines." Aplt. App. I at 126. The policy mandated termination of any employee with a positive drug test. Phillips 66 contracted with Cynergy, P.A. to provide medical review officer (MRO) services for the drug testing. For Oklahoma employees like Mr. Turner, the policy required the MRO to contact an employee after a positive test and determine whether the employee wished to discuss the results.

On April 24, 2017, Mr. Turner was selected for a random drug test and supplied a urine sample. On April 27, after he was involved in a workplace accident, he provided another urine sample for drug testing. That same day, a Cynergy MRO informed him his April 24 sample had tested positive for amphetamines. Thereafter, Phillips 66 received a Specimen Result Certificate, signed by Dr. Stephen Kracht, Cynergy's Chief MRO, confirming the test results for the April 24 sample. At the time, Mr. Turner had not been prescribed amphetamines. But, according to a letter he later provided from his doctor, he was taking over-the-counter medications, including Sudafed, for unspecified "medical conditions." *Id.* at 106.

---

does not deprive us of jurisdiction. *See Hyde Park Co. v. Santa Fe Council*, 226 F.3d 1207, 1209 n.1 (10th Cir. 2000).

On April 28, Phillips 66 terminated Mr. Turner's employment based on the positive drug test. He appealed under Phillips 66's policy, which provided appeal rights "for the limited purpose of appealing terminations involving the unauthorized use of a prescription drug." Aplt. App. IV at 163 (internal quotation marks omitted). In support of his appeal, Mr. Turner sought another drug test. He submitted to a hair sample test at an independent laboratory on April 28. The results of that test were negative. The post-accident sample he provided on April 27 also tested negative.

On or about May 9, 2017, Phillips 66 received a second Specimen Result Certificate, which Dr. Kracht also signed on behalf of Cynergy. It said a different laboratory had retested Mr. Turner's April 24 sample, which again tested positive for amphetamines. A Cynergy MRO again contacted Mr. Turner to inform him of the results. He told the MRO about his prescription medications and those of his wife and child because "they were trying to figure out what was going on." *Id.* at 165 (brackets and internal quotation marks omitted).

Phillips 66 denied Mr. Turner's appeal. He filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC), alleging disability discrimination under the ADA. The EEOC dismissed the charge and issued a right-to-sue letter.

Mr. Turner filed a two-page complaint in state court alleging the drug testing was illegal and his termination violated the ADA. After removing the case to federal court, Phillips 66 moved for summary judgment. The parties proceeded as though he was making four claims:

3

(1) an ADA claim that he was subjected to an impermissible medical examination and disability-related inquiry under 42 U.S.C. § 12112(d)(4)(A);

(2) a "traditional" ADA claim that he was terminated because of a disability, with his allergies constituting "a physical or mental impairment that substantially limits one or more [of his] major life activities," *id.* § 12102(1)(A);

(3) a "regarded as" ADA claim that he was terminated for being "regarded as" disabled, with his allergies constituting "an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity," *id.* § 12102(a)(1)(C), (3)(A); and

(4) a state-law claim that his drug testing violated the Oklahoma Standards for Workplace Drug and Alcohol Testing Act, Okla. Stat. tit. 40, §§ 551-565.

The district court granted the motion as to the three ADA claims. It declined to exercise supplemental jurisdiction over the state-law claim and remanded that claim to state court. Mr. Turner timely appealed the decision on the ADA claims.

## II. **DISCUSSION**

Mr. Turner contends the district court erred in making evidentiary rulings and in granting summary judgment to Phillips 66 on his three ADA claims.

### A. *The District Court Did Not Abuse Its Discretion in its Summary Judgment Evidentiary Rulings*

Mr. Turner contends the district court erred in overruling his objection to affidavits submitted by Phillips 66 from (1) Dr. Kracht; (2) Dr. Salvador Valldeperas, another Cynergy MRO; and (3) Dr. William Parsons, Phillips 66's Chief Medical Officer. Mr. Turner further argues the court erred in not giving preclusive effect to a decision from the Oklahoma Employment Security Commission (OESC), awarding him unemployment benefits. Finally, he argues the court erred in sustaining Phillips

4

66's objections to a printout from a page on Sudafed's website titled "How Our Products Work." Aplt. App. III at 58-60.

"At the summary judgment stage, evidence need not be submitted in a form that would be admissible at trial," but "the content or substance of the evidence must be admissible." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). "We review a district court's evidentiary rulings at the summary judgment stage for abuse of discretion." *Argo*, 452 F.3d at 1199. A court abuses its discretion when it "clearly err[s] or venture[s] beyond the limits of permissible choice under the circumstances." *Hancock v. AT&T Co.*, 701 F.3d 1248, 1262 (10th Cir. 2012) (internal quotation marks omitted).

1. **Phillips 66's Affidavits**

Mr. Turner contends the district court erred in considering the affidavits of Drs. Kracht, Valldeperas, and Parsons. Drs. Kracht and Valldeperas noted in their affidavits:

(1) their role for Cynergy;

(2) Cynergy provided MRO services for Phillips 66;

(3) the Specimen Result Certificates, which were attached to the affidavits, were "generated and kept in the ordinary course of Cynergy business" and "confirmed positive test results for amphetamine" for Mr. Turner "obtained through a definitive analytical technique, gas chromatography/mass spectrometry (GC/MS)"; and

5

(4) Mr. Turner had not provided any information indicating he had been prescribed amphetamines. Aplt. App. I at 154, 158.

They attached a memorandum from Dr. Kracht to Phillips 66 describing Mr. Turner's conversations with Cynergy's MROs following his positive test results.[3]

Dr. Parsons described in his affidavit:

(1) his medical experience and credentials;

(2) his duties as Phillips 66's Chief Medical Officer;

(3) his experience with Phillips 66's drug testing, including his knowledge of Phillips 66's drug testing policies and procedures;

(4) the materials he reviewed from Mr. Turner's appeal, including the test results and Mr. Turner's statement "that he believed that the test result was inaccurate because certain medications he was prescribed to take or he obtained over the counter caused a 'false positive' result for amphetamines," Aplt. App. II at 3; and

(5) his opinion, and the basis therefor, that Mr. Turner's positive test "was not a false positive and was not collected or tested improperly," *id.*

a. *Disclosure requirements under Fed. R. Civ. P. 26(a)*

Mr. Turner first challenged the affidavits based on disclosure requirements in Fed. R. Civ. P. 26(a). Rule 26(a) requires disclosure of: (1) "the identity of any [expert] witness it may use at trial to present evidence," Fed. R. Civ. P. 26(a)(2)(A); and (2) "the subject matter" of the expert's testimony and "a summary of the facts and opinions" for that testimony. *Id.* 26(a)(2)(C). "[I]f the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the

_____

[3] Dr. Valldeperas added in his affidavit that he participated in the first conversation with Mr. Turner.

6

party's employee regularly involve giving expert testimony," the disclosure also must include "a written report . . . prepared and signed by the witness." *Id.* 26(a)(2)(B).

The district court found that Phillips 66 had failed to disclose Dr. Parsons as a witness in violation of Rule 26(a)(2)(A) and had failed to satisfy the disclosure requirements under Rule 26(a)(2)(C) as to Dr. Kracht and Dr. Valldeperas. Apart from whether these doctors should be considered to be expert or fact witnesses, the court correctly observed that exclusion of the affidavits was not automatic. "If a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, . . . *unless the failure was substantially justified or is harmless*." Fed. R. Civ. P. 37(c)(1) (emphasis added). Whether a disclosure violation is harmless "is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (internal quotation marks omitted); *see also id.* (setting out several factors for a court to weigh when determining if a Rule 26(a) violation is harmless).

Here, the district court determined that any violations were harmless. It found (1) Mr. Turner failed to articulate—and "the court [was] unable to identify" on its own—"any prejudice or surprise [Mr. Turner] suffered as a result of the affidavits," Aplt. App. IV at 153; and (2) Mr. Turner did "not assert that Phillips 66 acted in bad faith, and the court [saw] no evidence of bad faith or willfulness by Phillips 66." *Id.* at 154. The court overruled Mr. Turner's objections.

On appeal, Mr. Turner repeats his arguments that Phillips 66 failed to comply with Rule 26(a) but fails to acknowledge, let alone dispute, the court's harmlessness determination under Rule 37(c)(1). Indeed, he conspicuously omits the harmlessness component when describing the rule. *See* Aplt. Opening Br. at 21 ("F.R.Civ.P. 37(c)(1) provides that a failure of disclosure results in the party not being allowed to use that information or witness to supply evidence on a motion or at trial.").

"Issues not raised in the opening brief are deemed abandoned or waived." *Coleman v. B-G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997). Moreover, it is not the court's responsibility to "manufacture" an argument for an appellant. *United States v. Powell*, 767 F.3d 1026, 1037 (10th Cir. 2014). Because Mr. Turner has failed to contest the district court's harmlessness determination, we affirm on this issue.

   b. *Qualifications and personal knowledge*

Mr. Turner next contests the affiants' qualifications and personal knowledge. He asserts:

   (1) Dr. Parsons worked for Phillips 66 and was not involved until after the testing was complete;

   (2) Drs. Kracht and Valldeperas did not work in the specific lab or for the company responsible for the testing; and

   (3) "[t]here is no evidence as to the[ir] qualifications . . . to testify as to what happens in a lab generally, nor what happened in the lab testing in this case."

Aplt. Opening Br. at 21-22.

On the affiants' qualifications, the district court properly found:

8

(1) all three affiants were certified MROs;

(2) Oklahoma law requires MROs have knowledge and training to interpret and evaluate lab test results, *see* Okla. Stat. tit. 40, § 552(11); and

(3) Phillips 66 adopted the standards of the United States Department of Transportation (DOT), which require an MRO to receive training on, *inter alia*, collection procedures for urine specimens, interpretation of drug and validity tests results, and chain of custody, reporting, and recordkeeping requirements, *see* 49 C.F.R. § 40.121(c).

As to the affiants' personal knowledge, the district court properly found

(1) Drs. Kracht and Valldeperas had personal knowledge based on "their employment with Cynergy, the company that provided MRO services to Phillips 66, and their respective participation in the positive drug test that forms the basis of this case," Aplt. App. IV at 155; and

(2) Dr. Parsons had personal knowledge because he was Phillips 66's Chief Medical Officer, was familiar with the testing procedures, and had reviewed documents related to Mr. Turner's positive drug test.

Mr. Turner has not challenged the district court's factual findings and has cited no authority showing the court erred. We discern no abuse of discretion based on our review of the record.

c.  Daubert *standard and statements of "Belief"*

Mr. Turner objected to Dr. Parsons's affidavit on the ground that it expressed beliefs rather than expert opinion and, therefore, was not "*Daubert* admissible." Aplt. Opening Br. at 22.

If "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," a qualified witness may provide expert testimony "in the form of an opinion or otherwise," provided: (1) "the testimony is based upon sufficient facts or data"; (2) "the testimony is the

9

product of reliable principles and methods"; and (3) the witness "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Under *Daubert*, a district court has an obligation to ensure that expert testimony "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "To be reliable under *Daubert*, an expert's scientific testimony must be based on scientific knowledge, which 'implies a grounding in the methods and procedures of science' based on actual knowledge, not 'subjective belief or unsupported speculation.'" *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (quoting *Daubert*, 509 U.S. at 590).

The district court agreed with Mr. Turner that Dr. Parsons's affidavit contained assertions such as the one that he did "not believe": (1) "[Mr.] Turner's use of over-the-counter medication would cause a 'false positive'"; (2) "the negative hair sample taken four days later undermines the earlier positive result"; or (3) "a drug would be detectable in [Mr.] Turner's urine [three] days after the April 24 random drug test." Aplt. App. IV at 156. But the court noted these statements were informed by Dr. Parsons's "thirty-four (34) years of experience as a physician and training as a certified Medical Review Officer" and his review of various documents.

The documents included the substance abuse policy, the drug test results and Specimen Result Certificates, Mr. Turner's letter after his termination, the letter from Mr. Turner's treating physician listing his medications, and the results of Mr. Turner's hair sample test. *Id.* The district court "conclude[d] that

10

[Dr.] Parsons'[s] affidavit offer[ed] opinions based on actual knowledge, rather than mere belief or speculation." *Id.* The court thus overruled Mr. Turner's objection.

Mr. Turner again has not challenged any of the district court's findings or cited any authority to show the court erred. His conclusory arguments are insufficient to show an abuse of discretion, and having reviewed the record, we discern no abuse of discretion.

2. **Mr. Turner's Evidence**

Mr. Turner next contends the district court erred in refusing to (1) afford the OESC decision binding effect,[4] and (2) consider the printout from Sudafed's website. After Phillips 66 moved for summary judgment, Mr. Turner filed a response that included (1) the OESC decision awarding him unemployment benefits; and (2) a printout from a page on Sudafed's website titled "How Our Products Work," Aplt. App. III at 58-60. In its reply brief, Phillips 66 objected to both items. Mr. Turner did not seek leave to file a surreply to respond to those objections. On appeal, he explains that he had been planning to present his response at a hearing on the

---

[4] Following his termination by Phillips 66, Mr. Turner filed for unemployment benefits with the OESC. He initially was denied benefits on the ground that he "was discharged from employment for misconduct connected to the work." Aplt. App. II at 43. Mr. Turner appealed, and an OESC hearing officer reversed, finding: (1) Phillips 66 had the burden of proving Mr. Turner "was discharged for misconduct connected to the work," Aplt. App. II at 44; (2) because Phillips 66 did not appear at the OESC hearing, there was no "evidence regarding its drug testing policy, the chain of custody, or the test results," *id.*; and (3) without evidence showing the validity of the testing and the results, the failed drug test could not support a finding of misconduct. Thus, the OESC hearing officer ruled that Mr. Turner was entitled to unemployment benefits.

11

summary judgment motion that the court had scheduled. Before the hearing date, however, the court granted summary judgment. In its order, the court (1) overruled in part Phillips 66's objection to the OESC decision, agreeing to consider it but declining to be bound by it; and (2) sustained Phillip 66's hearsay objection to the printout from Sudafed's website. Aplt. App. IV at 160.

Mr. Turner contends here that he was denied the opportunity to respond to the evidentiary objections and otherwise contests the district court's rulings regarding the OESC decision and the printout from Sudafed's website. His challenges fail because he has not alleged, let alone demonstrated, prejudice. *See Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009) (reiterating that, at least "[i]n ordinary civil appeals," "the party that seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted" (internal quotation marks omitted)).

Although Mr. Turner asserts that the district court's decision to enter a ruling before the scheduled hearing constituted "a denial of due process and an abuse of discretion," Aplt. Opening Br. at 23, he does not specify how a hearing may have altered the court's rulings on the OESC decision or the printout from the Sudafed website. *See Ingram v. Faruque*, 728 F.3d 1239, 1251 n.6 (10th Cir. 2013). And even if Mr. Turner had persuaded the district court to consider the website printout and to treat the OESC decision as "binding," Aplt. Opening Br. at 24, he has not shown how this would have affected the court's summary judgment ruling. *See Ingram*, 728 F.3d at 1251 n.6.

12

We thus reject Mr. Turner's challenges to the district court's rulings concerning the OESC decision and the printout from the Sudafed website.

B. ***The District Court Properly Granted Summary Judgment on the ADA Claims***

Mr. Turner challenges the district court's grant of summary judgment to Phillips 66 on his three ADA claims.

This court "review[s] summary judgment decisions de novo, applying the same legal standard as the district court." *Talley v. Time, Inc.*, 923 F.3d 878, 893 (10th Cir. 2019) (internal quotation marks omitted). "[W]e view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.* (internal quotation marks omitted). Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"A fact is material only if it might affect the outcome of the suit under governing law. And a dispute over a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1265-66 (10th Cir. 2015) (citations and quotations omitted). If the movant "demonstrate[s] the absence of a genuine issue of material fact," the nonmovant must then "set forth specific facts from which a rational trier of fact could find for the nonmovant." *Talley*, 923 F.3d at 893 (internal quotation marks omitted). The nonmovant cannot rely on unsupported conclusory allegations. *See Salehpoor v. Shahinpoor*, 358 F.3d 782, 789 (10th Cir. 2004).

13

1. **Medical Examination and Disability-Related Inquiry**

Mr. Turner contends his drug test and following discussion with the MRO about his prescription medications violated the ADA. We disagree.

Under the ADA, an employer "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). A plaintiff asserting such a claim need not establish a disability. *See Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 901 (10th Cir. 2017). But "a test to determine the illegal use of drugs shall not be considered a medical examination." 42 U.S.C. § 12114(d)(1); *accord* 29 C.F.R. § 1630.16(c)(1). Mr. Turner presents two arguments.

First, Mr. Turner asserts that, because his test was positive for amphetamines and he was taking an over-the-counter "amphetamine-related medication" recommended by his doctor, his drug test "was not for illegal use of drugs as permitted by 42 U.S.C. § 12114, but went beyond that to legal and appropriate use." Aplt. Opening Br. at 18; *see also id.* at 17 (asserting that § 12114 "applies only to testing for illegal use of drugs," that Phillips 66 tested for "controlled substances," that "'controlled' does not mean 'illegal,'" and that he "produced evidence that he made no illegal use of drugs"). He further contends the drug test was a medical examination that required Phillips 66 to demonstrate it was "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). And, he asserts,

14

because Phillips 66 made no such showing, the drug test was an illegal medical examination.

The district court found Mr. Turner "cite[d] no authority for the proposition that a test for illegal drugs becomes a prohibited 'medical examination' solely by virtue of a false positive." Aplt. App. IV at 169. Mr. Turner has cited no such authority on appeal and, like the district court, we have found none. Indeed, as the district court correctly observed, the EEOC has indicated a drug test does not become a medical examination simply because "the results reveal information about an individual's medical condition beyond whether the individual is currently engaging in the illegal use of drugs," such as "the presence of a controlled substance that has been lawfully prescribed for a particular medical condition, this information is to be treated as a confidential medical record." 29 C.F.R. Pt. 1630, App.[5] A test for the illegal use of drugs does not necessarily become a medical examination simply because it reveals the potential legal use of drugs. The district court, therefore, correctly rejected Mr. Turner's medical-examination claim.

---

[5] To the extent this guidance interprets 42 U.S.C. § 12114(d)(1), it is "entitled to some consideration" but not "special deference." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1165 n.5 (10th Cir. 1999) (en banc) (internal quotation marks omitted). To the extent it interprets 29 C.F.R. § 1630.16(c)(1), which largely echoes 42 U.S.C. § 12114(d)(1), it may be entitled to "substantial deference," *id.* (internal quotation marks omitted), but only if the regulation is ambiguous, *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019). We need not resolve this question, however, because, at the very least, we may defer to the EEOC's interpretation "to the extent it has the power to persuade." *Id.* (internal quotation marks omitted).

Second, Mr. Turner contends that the MRO's obtaining information about his prescriptions constituted an impermissible disability-related inquiry. Again, he has offered no authority to support his claim. Assuming without deciding that there was an inquiry,[6] it was not disability-related. Instead, as Mr. Turner testified during his deposition, he and the MRO "were trying to figure out what was going on" with the second positive test, at which point he gave the MRO a list of his medications and the medications taken by his wife and son. Aplt. App. I at 62. Although not binding, we note, as did the district court, that the EEOC has deemed such inquiries permissible.[7] The court, therefore, correctly rejected Mr. Turner's disability-related inquiry claim.

We thus agree Phillips 66 was entitled to summary judgment on Mr. Turner's medical examination and disability-related inquiry claim.

---

[6] As the district court correctly observed, Mr. Turner offered "no evidence . . . that the MRO directed any questions to a 'disability.' Rather, the undisputed evidence indicates only that the MRO *received* information regarding medications." Aplt. App. IV at 171 n.14 (emphasis added).

[7] *See* EEOC, ADA ENFORCEMENT GUIDANCE: PREEMPLOYMENT DISABILITY-RELATED QUESTIONS AND MEDICAL EXAMINATIONS, 1995 WL 1789073, at *6 (Oct. 10, 1995) (stating an employer is permitted to ask an applicant about lawful drug use if the applicant tests positive for illegal drug use and "may validate the test results by asking about lawful drug use or possible explanations for the positive result other than the illegal use of drugs," such as by asking, "What medications have you taken that might have resulted in this positive test result?" or "Are you taking this medication under a lawful prescription?"); EEOC, ENFORCEMENT GUIDANCE: DISABILITY-RELATED INQUIRIES AND MEDICAL EXAMINATIONS OF EMPLOYEES UNDER THE AMERICANS WITH DISABILITIES ACT (ADA), 2000 WL 33407181, at *3 (July 27, 2000) (defining and providing examples of a "disability-related inquiry" and noting "[t]he same standards for determining whether a question is disability-related in the pre- and post-offer stages apply to the employment stage").

16

## 2. "Traditional" and "Regarded As" ADA Claims

Mr. Turner contends the district court erred in granting summary judgment to Phillips 66 on his "traditional" and "regarded as" ADA claims. These claims fail because he has not argued, let alone demonstrated, pretext.

### a. *Legal background*

The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). For his "traditional" claim, Mr. Turner needed to show his allergies constitute "a physical or mental impairment that substantially limits one or more major life activities." *Id.* § 12102(1)(A). For his "regarded as" claim, he needed to show his allergies constituted "an actual or perceived physical or mental impairment." *Id.* § 12102(3)(A). Such an impairment need not "limit[] or [be] perceived to limit a major life activity," *id.*, but neither can it be "transitory and minor," *id.* § 12102(3)(B).

"A plaintiff can show intentional discrimination either by direct evidence of discrimination or by indirect evidence. Proof of discrimination by indirect evidence follows the three-part burden-shifting framework articulated in *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792, 802 (1973)]." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969 (10th Cir. 2017) (citation omitted). As explained below, the *McDonnell-Douglas* framework applies here. It first requires a plaintiff to show a prima facie case: "(1) that he is disabled within the meaning of the ADA; (2) that he is qualified for the job held or desired; and (3) that he was discriminated against

17

because of his disability." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1192 (10th Cir. 2018) (internal quotation marks omitted).

If a plaintiff establishes a prima facie case, "the burden shifts to the employer to offer a legitimate nondiscriminatory reason for" its employment decision. *Id.* at 1193 (internal quotation marks omitted). If the defendant articulates such a reason, the burden shifts back to the plaintiff to show the defendant's proffered reason is pretextual. *See id.*

An employee can show pretext "by revealing weakness, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence." *Id.* (internal quotation marks omitted). "Mere conjecture" will not suffice. *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017) (brackets and internal quotation marks omitted).

b. *Analysis*

Assuming, without deciding, that Mr. Turner could establish a prima facie case, Phillips 66 satisfied its "exceedingly light" burden to provide a legitimate, nondiscriminatory reason—the failed drug test—for Mr. Turner's termination. *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1043 (10th Cir. 2011) (internal quotation marks omitted). Mr. Turner then had the burden of showing pretext. He has not, however, even argued pretext, insisting "pretext is not even an issue" because his "evidence is direct." Aplt. Opening Br. at 16. But the fact that "Phillips 66 fired [Mr.] Turner for a positive drug test" is a far cry from direct evidence of

18

discrimination based on alleged disability. *See Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 883 n.4 (10th Cir. 2015) ("Direct evidence is evidence from which the trier of fact may conclude, *without inference*, that the employment action was undertaken because of the employee's . . . disability." (emphasis added) (brackets and internal quotation marks omitted)); *see also Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) (noting "[t]he classic example of direct evidence of discrimination" was when "the Supreme Court held that an explicit, mandatory age requirement was direct evidence of age discrimination").

Without direct evidence of discrimination, Mr. Turner must satisfy *McDonnell-Douglas*. And because he has not even argued pretext, he has abandoned any argument as to this prong of *McDonnell-Douglas*. *See Coleman*, 108 F.3d at 1205. His discrimination claim therefore fails.

## III. CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

19